HENRY v. KUNEY.

1. GAMING—CHANCE—DEFINITION .OF GAMBLING.
   Machine whereby player stands to win or lose money, trade checks or prizes, by a chance is a gambling device obnoxious to statute directed against gaming or gambling devices (Act No. 328, § 303, Pub. Acts 1931.

2. SAME—CHANCE—OBTAINING SOMETHING FOR NOTHING.
   It is not essential to gambling that player has a chance to lose but that he has a chance or lure to get something for nothing or by continuous play receive something of value from an amusement device not furnished to all patrons at the same cost.

3. SAME—BAGATELLE—PIN GAMES.
   Bagatelle or pin games consisting of playing board on which are located various point holes which are numbered, pins, rebound springs and other accessories for game which has as object the propulsion of a ball or marble into various scoring holes by means of a plunger or cue operating on a spring which is in turn pulled by player to such tension as he desires, on which machine is placed a notice that by obtaining a certain score the player is entitled to a number of free games which he re-

ceives in the form of a nickel for each game and it is possible for player to play again or retain the money *held,* gambling device, the keeping of which is a misdemeanor (Act No. 328, § 303, Pub. Acts 1931).

4. SEARCHES AND SEIZURES—GAMBLING DEVICES—PROPERTY—NOTICE —HEARING.

Bagatelle, pin games and other gambling devices, the keeping of which is declared to be detrimental to the public morals are not subjects of property protected by law, hence are liable to seizure, forfeiture and destruction without giving custodian thereof notice or an opportunity to be heard without violating any constitutional provision.

5. COSTS—SUIT AGAINST PUBLIC OFFICERS—JUDGMENT FOR DEFENDANTS.

In suit by claimed owners of certain machines, found to be gambling equipment, to enjoin interference by prosecuting attorney, sheriff, State and city police officers, upon affirmance of decree dismissing bill, defendants are *held,* entitled to recover excess (one and one-half) costs pursuant to 3 Comp. Laws 1929, § 15444.

Appeal from Lenawee; Rathbun (George A.), J. Submitted April 20, 1937. (Docket No. 126, Calendar No. 39,424.) Decided May 21, 1937.

Bill by H. Carlton Henry and W. F. Wood, doing business as Coin Machine Service Company, against LaVon B. Kuney, Lenawee County Prosecuting Attorney, Fred Seger, Lenawee County Sheriff, Arlo Bailor, Officer in Charge of State Police at Blissfield, and Arch Wilson, Commissioner of Public Safety of City of Adrian, to restrain interference with operation and seizure of bagatelle games. Bill dismissed. Plaintiffs appeal. Affirmed.

*James H. Baker* and *Charles A. Wilson,* for plaintiffs.

*L. B. Kuney* and *Lawrence J. Hammond,* for defendants.

SHARPE, J.   In January of 1935 the present plaintiffs began a friendly suit against the present defendants to determine the validity of certain games of amusement and skill.   A hearing was had on January 10, 1935, at which time the trial judge defined a gaming or gambling machine as, "Any machine, device or apparatus, by the operation or use of which the customer, purchaser or player anticipates a chance gain either in money or merchandise beyond a fair exchange (after allowing for reasonable profit) for the amount of money invested, is a gambling device that violates the statute."   Following this opinion the prosecuting attorney of Lenawee county issued an order to seize all gambling machines found in the county and as a result of this order the sheriff and State troopers seized nine of plaintiff's so-called pin or bagatelle games.

The present action is upon a bill of complaint filed by plaintiffs in which they claim ownership of the machines and contend that the machines are games of skill and not of chance and are not to be construed as gambling equipment within the purview of the Michigan statutes regulating gambling and gaming tables.   In their bill plaintiffs also ask that the defendants be restrained from further interference with plaintiffs' operation of such tables or games and that plaintiffs be allowed resultant damages.

The trial court found that the nine-pin or bagatelle games so confiscated are all of practically the same general type, although the playing boards are somewhat different.   On the playing board are located various point holes which are numbered, pins, rebound springs, and accessories of similar nature. The object of the game is to propel a ball or marble into these various scoring holes.   The ball is propelled by the action of a plunger or cue operating on a

spring which is in turn pulled by the player to such tension as he desires on the spring thereby propelling the ball onto the playing field and into the various holes. All playing machines have a score card with so many free games marked on these cards. On nearly all of these machines is a notice advising the player that the game is for amusement only — no gambling. There is also another notice advising the player what further games may be had if the player attains a certain score, for example, one machine states that a player getting 4 deuces and the joker is entitled to 20 free games; these free games permit the player to play the machine again without further charge. The player receives the free games in the form of a nickel for each of such games and it is possible for the player to play the game again or retain the money. The merchant keeps track of the money he pays out and when plaintiffs go to collect from the machines, the merchant is reimbursed. The trial court dismissed plaintiffs' bill of complaint from which order the present appeal is taken.

The defendants contend that the bagatelle or pin ball games at issue in the present cause are gambling devices *per se*. Act No. 328, § 303, Pub. Acts 1931, reads as follows:

"Any person who shall for hire, gain or reward, keep or maintain a gaming room, or a gaming table, or any game of skill or chance, or partly of skill and partly of chance, used for gaming, or who shall knowingly suffer a gaming room, or gaming table, or any such game to be kept, maintained or played on any premises occupied or controlled by him, shall be guilty of a misdemeanor, punishable by imprisonment in the State prison not more than two years, or by a fine of not more than one thousand dollars; and any person aiding, assisting or abetting in the keep-

ing or maintaining of any such gaming room, gaming table, or game, shall be guilty of a misdemeanor, punishable by imprisonment in the State prison not more than two years or by a fine of not more than one thousand dollars.''

Under this section of the act above quoted it is not necessary to determine whether the games under consideration are games of skill or games of chance, or games partly of skill and partly of chance as the statute makes no distinction in either kind of game.

The general rule is laid down in Ann. Cas. 1915C, p. 173:

''Perhaps the most satisfactory rule that can be formulated, in the light of the authorities, is the most obvious one, that where there is an element of chance in the operation of the slot machine — where the one who plays the machine stands to win or lose money, trade checks, or prizes, by a chance,— the machine is a gambling device and obnoxious to statutes directed against gaming or gambling devices.''

In *Snyder* v. *City of Alliance,* 41 Oh. App. 48, 54 (179 N. E. 426), the court said:

''We believe that it is not essential to gambling that one should have a chance to lose, but that the player has a chance and lure to get something for nothing. Now, does a patron of this machine *by continuous play receive something of value* from the amusement device? This we answer in the affirmative; for amusement is a thing of value, for which more money is spent perhaps than for any other purpose. The appellant lays much stress on the fact that play of his device by the use of his tokens or checks but gives amusement to his patrons; but if this be the controlling factor, inducing continuous play, amusement is not furnished all patrons in the same quantity at the same cost; and therein lies the vicious element of one's obtaining something for nothing.''

In *Re Cullinan,* 114 App. Div. 654 (99 N. Y. Supp. 1097), the court said:

"It is the hazard, the chance of winning more than the sum ventured, which draws people to the machine, and that element was the conspicuous one retained in its mechanism, and it is that which brings it within the condemnation of the statute."

In *State* v. *Googin,* 117 Me. 102 (102 Atl. 970), the court said in commenting upon a gambling machine:

"But it is said there is no loss to the machine in the end, and consequently no chance, because the machine has calculated the profits and losses beforehand, and set apart a certain part of the profits to be allowed its customers. True, but not to all customers alike. Some get something; some get nothing; some more; some less. In this lies the test of what this device means, and the theory upon which it is conceived and worked, namely, to induce customers to play the machine with the expectation of getting something for nothing — it matters not what customer is successful — as it is perfectly obvious that one part of the public pays, in money for what another part of the public gets in prizes. In other words, this machine is a device designed to play one part of the public against another part of the public, for the purpose of inducing the whole public to take the chance of gain, which in the end results in producing to its owner the predetermined profits."

In the machines in question there is the chance to receive additional plays without additional cost to the player or at his option there is the chance for profit if he is skillful and lucky. The player has the chance to obtain from 1 to 20 free games or receive the equivalent in money. As was said in *City of Moberly* v. *Deskin,* 169 Mo. App. 672, 679 (155 S. W. 842), "The element of chance is the soul of the transaction. The operator hopes by chance to get

something for nothing. The dealer hopes chance will save him from giving something for nothing."
In our opinion the record shows the games to be gaming devices and as such are prohibited by statute.

The next question that presents itself to us for review is the authority of the officers to confiscate the above gaming devices. The statute above quoted is silent upon the authority of officers to destroy such devices, but makes it a misdemeanor for any person to keep any apparatus used for gambling.

In 24 R. C. L. p. 725, § 29, it is said:

"An owner of property has no vested or constitutional right to use or allow the use of it for purposes injurious to the public health or morals, and the State has the right in the exercise of its police power to provide for the seizure and destruction of property so used, or intended to be used, without giving the custodian thereof notice or an opportunity to be heard. This rule has been applied to such articles as gambling instruments in their nature incapable of use for any other purpose."

It is our opinion that these gaming machines, being prohibited by statute, their owners acquire no property rights in them. In *Frost* v. *People,* 193 Ill. 635, 640 (61 N. E. 1054, 86 Am. St. Rep. 352), it is said:

"The legislature have determined that gambling implements and apparatus are pernicious and dangerous to the public welfare, and the keeping of them is an offense prohibited by law. They are, therefore, not lawful subjects of property which the law protects, but have ceased to be regarded or treated as property, and are liable to seizure, forfeiture and destruction without violating any constitutional provision "

The decree of the lower court is affirmed. By virtue of 3 Comp. Laws 1929, § 15444, defendants may recover costs.

FEAD, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, POTTER, and CHANDLER, JJ., concurred.