OATMAN *v.* PORT HURON CHIEF OF POLICE.

1. GAMING—PIN-BALL MACHINES—FREE PLAYS—THING OF VALUE —STATUTES.

    The opportunity to have free plays on a pin-ball machine is a thing of value as the term is used in statutes pertaining to gaming (Act No. 328, § 302, Pub. Acts 1931).

2. SAME—PIN-BALL MACHINES.

    A pin-ball machine is an apparatus ordinarily used for gambling, a gaming device.

3. SAME—CHANCE—FREE PLAYS.

    A machine which is played by a person who stands to win or lose money, trade checks, or prizes, by a chance or mostly by chance, is a gambling device; there being no difference in principle between a trade check and a free play.

4. SAME—PIN-BALL MACHINE—FREE PLAYS—STATUTES.

    A pin-ball machine that was operated in such a way as to give free plays to lucky players was properly treated as an apparatus used for gaming or gambling within the meaning of statute relating thereto (Act No. 328, § 302, Pub. Acts 1931).

    NORTH, C. J., and STARR and BOYLES, JJ., dissenting.

Appeal from St. Clair; Boomhower (Xenophon A.), J., presiding. Submitted June 15, 1944. (Docket No. 69, Calendar No. 42,717.) Decided November 30, 1944. Rehearing denied January 11, 1945.

Bill by Guy Oatman against Thomas Davidson, Chief of Police of the city of Port Huron, to restrain interference with operation of plaintiff's bagatelle or pin-ball games. Ferris E. Lucas, Sheriff of St. Clair County, intervened as a party defendant. Decree for defendants. Plaintiff appeals. Affirmed.

*Benedict & Benedict (Walsh, Walsh, O'Sullivan & Schlee,* of counsel, on application for rehearing), for plaintiff.

*Eugene F. Black,* for intervener.

REID, J. Plaintiff and appellant filed this bill to enjoin the chief of police of the city of Port Huron from interfering with the operation of plaintiff's pin-ball machines, and the sheriff of St. Clair county intervened. Plaintiff has about 60 pin-ball machines in operation in public places in and near Port Huron. The person playing the machine deposits a five-cent coin which causes a lever to drop, a ball is propelled up a slight slope and its progress down again is interrupted by pins or bumpers, different lights and gadgets are lighted up and the downward course of the ball, which is entirely by chance or with a slight variation by reason of acquired knowledge and skill on the part of the player, determines whether the player is lucky or has obtained a favorable result in scored points. The skill of the player in any event is a very slight factor in changing the result.

The machine is of the type generally used and well recognized as a gambling device.

Plaintiff claims that his machines are not actually used or put out in various public places for the pur-

pose of returning cash but give only free plays to lucky players. Since these free plays, the testimony shows, would ordinarily cost the player five cents each, the opportunity to have free plays is a thing of value. Players who are lucky may receive as many as 60 free plays, worth $3. It requires about three minutes to make a play. *People* v. *One Pinball Machine owned by Henry Fox,* 316 Ill. App. 161 (44 N. E. [2d] 950).

The fact that the police commissioner and sheriff, appellees, make no proof that cash is actually paid in lieu of the free plays, does not alter the character of the machine one iota. It is an apparatus ordinarily used for gambling, a gaming device. There is nothing to stop the proprietor of any establishment where the machine is in operation from turning the luck from free plays to cash as ordinarily occurs in the use of such machines.

Appellant cites *Henry* v. *Kuney,* 280 Mich. 188, and *Gibson* v. *Martin,* 308 Mich. 178. It must be noted that in each of those cases it is shown that the successful player has the option of receiving cash, expressly denied in the instant case.

In *Henry* v. *Kuney, supra,* p. 192, the general rule is laid down,

"Where there is an element of chance in the operation of the slot machine—where the one who plays the machine stands to win or lose money, trade checks, or prizes, by a chance,—the machine is a gambling device."

There is no difference in principle between a trade check and a free play. In *State, ex rel. Green, Deputy Solicitor,* v. *One 5¢ Fifth Inning Base Ball Machine,* 241 Ala. 455 (3 South. [2d] 27), the Alabama supreme court construed and applied a statute forbidding gambling devices defined as, "Any machine, mechanical device, contrivance, appliance or inven-

tion, whatever its name or character, which is operated or can be operated as a game of chance." Though the court found, p. 457, "There is no proof the machine has.been used for gambling, nor that players were offered inducements by way of prizes or other awards," the machine was found to be a gambling device, of which the court further said,

"By placing a nickel in the slot of this machine several balls are released which are ejected on the board by pulling a plunger and striking against the ball. When the ball strikes the projections or bumpers on the board, a certain score would be made, and by hitting certain bumpers a higher score results than in striking other."

There are varying decisions as to pin-ball machines in various States depending in some instances at least on the precise phraseology of the particular statute.

Appellees were justified in treating these machines as apparatus used for gaming or gambling within the meaning of our statute, Act No. 328, § 302, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-302, Stat. Ann. § 28.534).

The decree dismissing the bill is affirmed, with costs to appellees.

WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with REID, J.

BOYLES, J. (*dissenting*). I do not concur in the result reached by Mr. Justice REID.

The plaintiff has about 60 so-called pin-ball or bagatelle machines in various places in Port Huron and the adjacent area in St. Clair county. The chief of police of Port Huron ordered them removed and threatened to confiscate them as gambling devices. Plaintiff filed this bill of complaint to enjoin the

chief of police from interfering with the operation of the machines. The sheriff of St. Clair county asked for and obtained leave to intervene as a party defendant. The court below denied the relief sought and dismissed the bill. Plaintiff appeals.

The mechanics and methods of operation of so-called pin-ball machines have been before us recently on two occasions and are set forth in *Henry* v. *Kuney,* 280 Mich. 188, and *Gibson* v. *Martin,* 308 Mich. 178. In those cases, as will. be pointed out, pin-ball machines were held to be gambling devices because of the use made of them' in their operation. If the machines in the instant case were used as in those cases—as gambling devices—the record fails to show it. According to the record in this case neither the machines nor those who own or operate them give out to the player any coin, token, or anything of value whatever, unless it be the mere opportunity of playing the machine some more, if the total score on the machine is high enough. That, alone, does not establish a gambling device.

There is nothing in the record before us to indicate that these machines have been or were being operated as gambling devices. The only proof in the record is that the machines were operated solely for the amusement of the player. The question before us is:

"Is a pin-ball or bagatelle machine which is coin operated and which *automatically* gives the successful player free plays on the machine and nothing else, the number of free plays depending on the score he makes, a gambling device?"

The answer does not depend upon whether the machines *could be* operated for gambling purposes. This is well pointed out in *People* v. *Jennings,* 257 N. Y. 196 (177 N. E. 419), where the court said:

"The district attorney introduced in evidence a circular issued by the manufacturer of this machine, the Mills Novelty Company, of Chicago, Illinois, showing how it can be altered and changed so as to be used as a gambling device, that is, one that will emit, with an element of chance, money or things of value by the insertion of a coin and the turn of a handle. The people also introduced expert testimony to show how the particular machine in the possession of the defendant might be thus played if the mechanism were different. Such evidence was entirely incompetent. No changes in the machine had been made while in the possession of the defendant. It discharged only candy mints and rings of no monetary value. The case against him cannot be upheld by evidence of what might have been done. Sufficient unto the day is the evil thereof."

The mere fact that an implement, object or device can be used for gambling does not make it a gambling device *per se*. Were this not true, it would follow that ordinary playing cards, tables, coins, golf clubs, matches, almost any inanimate object, would be a gambling device *per se* and subject to confiscation as such. The distinction between gambling devices *per se* and objects made so by use was pointed out in *People* v. *Lippert*, 304 Mich. 685.

The mechanics of pin-ball or bagatelle machines, and method of their illegal use in the operation, was described in detail in *Henry* v. *Kuney, supra*. In that case an injunction to restrain certain law-enforcement officers from interfering with or seizing the machines was denied. The distinction between the facts in that case and the case at bar is clearly indicated in the opinion. In that case the machines became gambling devices by the method of operation. We said:

"The player receives the free games in the form of a nickel for each of such games and it is possible

for the player to play the game again or retain the money. The merchant keeps track of the money he pays out and when plaintiffs go to collect from the machines, the merchant is reimbursed. * * * In the machines in question there is the chance to receive additional plays without additional cost to the player or at his option there is the chance for profit if he is skillful and lucky. The player has the chance to obtain from 1 to 20 free games or receive the equivalent in money.''

The issue came before the court again in *Gibson* v. *Martin, supra,* decided in February, 1944. Gibson sought to enforce specific performance of a contract whereby Martin gave him exclusive right to own and operate pin-ball and other coin-operated amusement machines in Martin's places of business. The court again held that the pin-ball machines were gambling devices—based on the method of operation. We said:

"If a total over a certain designated amount is registered, the player wins the number of games designated and he can either play free games or obtain cash for the number of games won.

"When the cause came on for trial and at the close of plaintiff's case, the defendant made a motion to dismiss plaintiff's bill of complaint on the ground that the contract was against public policy. The motion was denied. Further testimony was taken which indicated that some of the machines were used as gambling devices. * * *

"In our opinion the pin-ball machines mentioned in the contract are gaming devices. The amusement given by the machine is the chance to get either money or free games. Plaintiff participated in the promotion of this illegal purpose by supplying and servicing the machines, and making allowance or giving credit for money paid out as 'winnings.' Under such circumstances we must

hold the contract void as being against public policy."

Mr. Justice Reid writes that the opportunity afforded the player to have free plays is a thing of value, that there is no difference in principle between a trade check (redeemable in cash or merchandise) and a free play. I do not agree. While this seems to be a question of first impression in this State, it has been passed upon in other jurisdictions. In a recent opinion of the United States court of appeals for the district of Columbia, the court held:

"The term 'property' as used in antigambling statute includes goods, chattels, effects, evidences of rights in action, and all written instruments by which any pecuniary obligation, or money or right or title to property, real or personal, is created or transferred, but none of such terms should be expanded to include a free amusement feature such as privilege of playing an additional free game if certain score is made.

"Where player of pin-ball amusement machine achieving certain minimum score would receive a 'free play' or another 'try' without an additional coin but nothing more, the machine was not a 'gambling device' designed for purpose of playing game of chance for 'property' within antigambling statute." *Washington Coin Machine Association* v. *Callahan* (syllabi), 79 App. D.C. 41 (142 Fed. [2d] 97).

The superior court of Pennsylvania has held:

"The operation of a slot machine which vended mints and produced combinations of symbols entitling operator to free plays, but did not give mints on the free plays and was incapable of ejecting coins or anything except mints, did not authorize conviction of establishing gambling place. 18 P. S. § 1441.

"A lure to play a machine or to read a witty saying or absurd prediction of the future is not a 'thing

of value' within meaning of statute against establishing gambling places." *Commonwealth* v. *Kling* (syllabus), 13 Atl. (2d) 104.

The supreme court of Kansas has held:

"A particular 'pin-ball' machine or device—described more fully in the opinion—in no case 'pays' any money or tangible property. Upon deposit of a coin every player is enabled to play one round or game, with scores automatically registered. If certain scores are made the player is accorded the privilege of entertaining or amusing himself by playing additional games. Such additional games constitute the only thing which a player may win. *Held,* that the privilege of such additional entertainment or amusement is not 'property' within the meaning of G. S. 1935, 21–1508, and that therefore the machine does not fall within the prohibition of that statute." *State* v. *Waite* (syllabus), 156 Kan. 143 (131 Pac. [2d] 708, 148 A. L. R. 874).

In the case at bar the only possible ground for holding the machines to be gambling devices, when they are operated as shown by the record, lies in the fact that they give amusement unequally to different players—that some may get more amusement than others, for the same amount of money. This might equally be said of persons who pay fees to play golf or for admission to ball games. It is not sufficient to make these machines gambling devices *per se.*

A decree should be entered enjoining the defendants from interfering with the use of the machines when used solely for amusement, and unless it be made to appear that the machines are being used for gambling, within the scope of this opinion. No costs, on account of the public nature of the issue involved.

NORTH, C. J., and STARR, J., concurred with BOYLES, J.