JOSEPH FARINA *v.* JOHN C. KELLY, COMMISSIONER OF STATE POLICE

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued May 6—decided June 21, 1960

*William L. Hadden,* with whom were *Leon Ris-Cassi, William R. Davis* and, on the brief, *Samuel Googel,* for the appellant (plaintiff).

*Albert L. Coles,* attorney general, with whom was *Michael J. Scanlon,* assistant attorney general, for the appellee (defendant).

*John P. Flanagan,* as amicus curiae.

MURPHY, J. The plaintiff is the owner of certain coin operated devices, commonly called pinball machines, which were seized by state police officers acting under orders issued by the defendant as commissioner of state police. The plaintiff applied to the Superior Court for an injunction to restrain the defendant from confiscating the seized machines and from seizing other similar machines. After a full trial on the merits, the injunction was denied. The plaintiff has appealed.

There are two statutes which are pertinent to the disposition of the issues involved in this case. They are General Statutes §§ 53-278 and 53-279.[1] Neither

---

[1] "Sec. 53-278. KEEPING BILLIARD TABLE OR SLOT MACHINE FOR GAMBLING PURPOSE. Any person who keeps a billiard table which is used for the purpose of gaming, or a slot machine which is used or

statute refers to a pinball machine as such. Section 53-278 applies only to billiard tables and slot machines. Unless the plaintiff's pinball machines are slot machines, they do not come within the purview of this statute, which makes it a criminal offense to keep a slot machine which is either used or designed for the purpose of a lottery or gaming. Section 53-279 authorizes the arrest of persons possessing general gambling equipment as well as billiard tables used for gaming and slot machines used or designed for a lottery or gaming, and also the seizure of such articles or equipment. It therefore becomes necessary to decide whether the plaintiff's pinball machines are slot machines and, if so, whether they are used or designed for the purpose

designed for the purpose of a lottery or gaming, or which is used or designed to discharge with or without merchandise any tokens that may be used for further operation of a slot machine or for exchange, or which is used or designed to display any symbol entitling any person by reason of such display to receive merchandise or money, shall be fined not more than five hundred dollars or imprisoned not more than one year or both. Any person who collects or receives any money from a billiard table or a slot machine, or for the use thereof, while the same is kept or used as herein provided, shall be fined not more than five hundred dollars or imprisoned not more than one year or both.

"Sec. 53-279. ARREST OF KEEPER; SEIZURE OF MACHINE. Any sheriff, deputy sheriff, constable, chief of police or police officer may, within his precinct, arrest, without a warrant, any person whom he finds in possession of any slot machine, gambling device or other equipment, paraphernalia, papers, books or money, used for gambling, or used or designed in violation of the provisions of section 53-278, and seize such slot machine or other device found in the possession of such person, and may detain such person and such device in some place of safe-keeping until warrants can be procured for the arrest of such person and the seizure of such slot machine or other device. The officer making such arrest or seizure shall immediately make complaint to the proper prosecuting officer, who shall forthwith make his written complaint to some judge or trial justice having jurisdiction, and such judge or trial justice shall issue his warrant, based on such complaint, and, in case of seizure, action shall then be taken thereon pursuant to the provisions of sections 54-33 and 54-35."

of a lottery or gaming. Two of the machines were introduced as exhibits in the trial court and were used by counsel on appeal to substantiate their arguments. The plaintiff maintains that the machines are designed and used for amusement purposes only and are not gaming devices.

The trial court made a finding which included a lengthy, detailed description of the construction of the machines and the operation of the intricate mechanisms and electrical contrivances which cause the machines to light up when played. Each machine was somewhat different in the backboard arrangement, though fundamentally they were similar in operation and the end result was the same. It does not seem necessary to incorporate in this opinion more than a general statement of the design and function of the machines, together with the observation that they are elaborate examples of the ingenuity and cleverness of their creators. Each machine consists of an inclined board, under glass, containing a return-ball hole and twenty-five numbered holes, in front of which there are bumpers to prevent the balls from rolling directly into the holes. At the rear of the playing field, there is an upright backboard displaying one or more squares resembling bingo cards. The scores of the game are recorded on these squares, which contain twenty-five numbers in five horizontal and five vertical rows. To play the machine, a player inserts a five-cent piece into a slot designed for that purpose. The coin releases five balls, which are played one at a time by propelling each ball with a spring-driven plunger. The balls bounce from bumper to bumper, eventually falling into one of the numbered holes or into the return-ball hole. When a number is scored, the corresponding number on the backboard lights up. A

player who lights up three, four or five numbers in a horizontal, diagonal or vertical line wins free plays which are recorded on the backboard. The number of free plays won depends on the arrangement of the numbers lighted and can run as high as 600 for a "bingo," i.e., five numbers in a line. Special equipment in the machines makes provision for multiple coin operation so that additional balls or extra game features are given and the scoring opportunities increased. The player has no control over the number of coins required to activate the special features or to get a higher score. How many coins are needed is controlled by the internal mechanism of the machine and determined by chance. Other equipment in the machine, within the sole control of the owner for adjustment and manipulation, governs the pay-off possibilities; an adjustable concealed plumb bob eliminates the effect of a player's attempt to substitute skill for chance by tilting or bumping the machine to cause the ball to fall into a particular hole.

Webster's New International Dictionary (2d Ed.) defines a slot machine as a machine the operation of which is started by dropping a coin into a slot. Under this definition, which we adopt, the plaintiff's machines are slot machines. However, that fact alone does not make possession of them illegal. Otherwise, it would be unlawful to have a pay telephone with a coin slot or a candy vending or soft-drink dispensing machine, or other lawful devices which operate upon the insertion of a coin. Section 53-278 makes it illegal to keep a slot machine which is used or designed for the purpose of a lottery or gaming. The word "gaming" is synonymous with gambling. *Opinion of the Justices*, 73 N.H. 625, 628, 63 A. 505; 18 Words & Phrases (Perm. Ed.) 31.

We have held that a lottery is characterized by three constituent elements, namely, a prize, a chance, and a price. *State* v. *Dorau,* 124 Conn. 160, 168, 198 A. 573; *State* v. *Mola,* 128 Conn. 407, 409, 23 A.2d 126. Other jurisdictions have held that the same three elements are to be found in gambling. *State* v. *One "Jack and Jill" Pinball Machine,* 224 S.W.2d 854, 860 (Mo. App.) and *Williams* v. *State,* 65 Ga. App. 843, 844, 16 S.E.2d 769. In *Westerhaus Co.* v. *Cincinnati,* 165 Ohio St. 327, 335, 135 N.E.2d 318, gambling is defined as the payment of a price for a chance to gain a thing of value as a prize, while in *State* v. *Mint Vending Machine,* 85 N.H. 22, 23, 154 A. 224, it is stated that, as commonly understood, gambling involves not only chance but a hope of gaining something beyond the amount played, or, as it is frequently expressed, the chance of winning something for nothing.

"The coin inserted in the pinball machine presumably is paid solely for the amusement of operating the machine. Thus, the coin measures the value of a game. Therefore, a free game . . . has a definite fixed value. If one game is worth a nickel, it is clear that additional games are things of value. And the rule is the same whether the machine emits discs with which it can be replayed or works automatically as in the case at bar." *State* v. *Wiley,* 232 Iowa 443, 447, 3 N.W.2d 620; see *People* v. *One Pinball Machine,* 316 Ill. App. 161, 44 N.E.2d 950, and *Oatman* v. *Port Huron Chief of Police,* 310 Mich, 57, reported as *Oatman* v. *Davidson,* 16 N.W.2d 665. The machines involved here do not discharge tokens to be used for either free plays or exchange. If they did, they would violate a specific provision of § 53-278. However, the balls which are released for free plays serve the same purpose as such tokens. It has been

held that the thing played for and received is actually the right to operate the machine an additional time or times and not the token which represents that value. *State* v. *Abbott,* 218 N.C. 470, 478, 11 S.E.2d 539. In answer to the plaintiff's claim that his machines are for amusement only, we quote: "Amusement is a thing of value. Were it not so, it would not be commercialized. . . . Since amusement has value, and added amusement has additional value, and since it is subject to be procured by chance without the payment of additional consideration therefor, there is involved in the game three elements of gambling, namely, chance, price and a prize." *Kraus* v. *Cleveland,* 135 Ohio St. 43, 46, 47, 19 N.E.2d 159.

A coin operated pinball machine which is designed to provide free plays upon the scoring of certain numbers or combinations of numbers is a gaming device. The plaintiff's machines are in this category. Their possession was in violation of § 53-278, and their seizure was authorized under § 53-279. "A marble or pinball machine, so 'rigged' that a player can win (through chance) the property or property right of 'free plays' thereon, as an incident to manipulating a projector propelling marbles onto the face of the machine, is a 'gaming device' . . . ." *State* v. *Larimore,* 293 S.W.2d 277, 278 (Tex. Civ. App.).

There is no error.

In this opinion the other judges concurred.