AUTOMATIC MUSIC AND VENDING CORPORATION v LIQUOR
CONTROL COMMISSION

Docket No. 71889. Submitted April 18, 1984, at Lansing.—Decided
March 18, 1985. Leave to appeal applied for.

Officers of the Michigan Liquor Control Commission confiscated a
"draw poker" video machine as a gambling device and issued a
complaint with the commission against the Fraternal Order of
Eagles, Aerie No. 3677, in Sanford, Michigan. The Eagles hold
a club license issued by the commission. A hearing was held
before a hearing commissioner who rendered an opinion finding
the machine to be a game partly of skill and partly of chance
and an unlawful gambling device. The hearing commissioner
also ruled that Automatic Music and Vending Corporation, the
owner of the machine, could not intervene in the hearing as it
was not an involved party. The commissioner ordered a fine of
$250 and costs. The commissioner's decision was upheld by the
commission on appeal. Automatic Music then petitioned in the
Ingham Circuit Court for an order of superintending control to
review the actions of the commission. The circuit court, Robert
Holmes Bell, J., ordered that the court take superintending
control of the matter and reversed the commission. Judge Bell
found that the free replays given by the machine do not
constitute a reward and are not gaming and, therefore, not
illegal. The Michigan Liquor Control Commission appeals.
*Held:*

1. It was proper for the circuit court to allow Automatic
Music to intervene and petition the court for an order of
superintending control.

2. The "draw poker" video game involved in this action is not
a gaming device. The Legislature, in enacting MCL 750.303(2),
a Penal Code provision concerning gambling, intended to legal-
ize machines which are games having an element of skill and
where the "reward" is limited to free games and does not
include pecuniary or merchandise rewards.

3. MCL 750.303(2) is applicable to this case insofar as it

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 2 Am Jur 2d, Administrative Law § 735.
[3] 2 Am Jur 2d, Administrative Law §§ 76, 735, 743.
[4] 38 Am Jur 2d, Gambling § 17.

legalizes mechanical amusement devices which through the application of an element of skill reward the player with the right to replay the mechanical device at no additional cost. The balance of that subsection is arbitrary and vague and, therefore, unconstitutional.

Affirmed.

CYNAR, J., concurred and wrote separately to note that he found the majority's reasoning compelling for constitutional as well as practical reasons.

1. SUPERINTENDING CONTROL — APPEAL — COURT RULES.

An order of superintending control does not supersede the use of normal appellate procedures (GCR 1963, 711).

2. SUPERINTENDING CONTROL — APPEAL.

Superintending control is a proper remedy when general policies of an inferior tribunal are being reviewed.

3. ADMINISTRATIVE LAW — SUPERINTENDING CONTROL — PARTIES — INTERVENTION — COURT RULES.

A petitioner should be allowed to intervene in an action in which it was not a party and petition the circuit court for an order of superintending control where the petitioner is aggrieved by the action of an administrative agency which it seeks to have reviewed (GCR 1963, 711.2).

4. LICENSES — GAMING — PRIZES — CONSTITUTIONAL LAW.

The Legislature, by the passage of the Penal Code subsection concerning exceptions to the prohibition of gaming rooms or apparatus, intended to legalize machines which are games having an element of skill where the reward is limited to free games and does not include pecuniary or merchandise rewards; the subsection is constitutional insofar as it legalizes mechanical amusement devices which through the application of an element of skill reward the player with the right to replay the mechanical device at no additional cost, but the balance of the subsection is arbitrary and vague and, therefore, unconstitutional (MCL 750.303[2]; MSA 28.535[2]).

*Daniel S. Cooper, P.C.* (by *Daniel S. Cooper),* for appellees.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Frank J. Pipp* and *Larry F. Brya,* Assistants Attorney General, for appellant.

Before: D. E. Holbrook, Jr., P.J., and Cynar and T. Gillespie,* JJ.

T. Gillespie, J. This appeal is from an order of superintending control in which the Circuit Court for Ingham County reversed an administrative order of the Michigan Liquor Control Commission which had found Aerie No. 3677, Fraternal Order of Eagles, in Sanford, Michigan, in violation of MCL 750.303; MSA 28.535 and 1980 AACS R 436.1013 concerning gaming.

The order of the circuit court is affirmed.

The Fraternal Order of Eagles, Aerie No. 3677, in Sanford, Michigan, is the holder of a club license issued by the Michigan Liquor Control Commission. This license was issued pursuant to MCL 436.24(c); MSA 18.995(c).

As a permit holder, it is subject to regulation under 1980 AACS R 436.1013, which provides:

"(1) A licensee shall not allow unlawful gambling on the licensed premises.

"(2) A licensee shall not allow any gambling devices on the licensed premises which are prohibited by the statutes of this state."

The permit holder would also be bound under the applicable gaming statute which is MCL 750.303; MSA 28.535 and reads in part:

"(1) A person who for hire, gain, or reward, keeps or maintains a gaming room, gaming table, game of skill or chance, or game partly of skill and partly of chance, used for gaming, or who permits a gaming room, or gaming table, or game to be kept, maintained, or played on premises occupied or controlled by the person, is guilty of a misdemeanor, punishable by imprisonment for not more than 2 years, or a fine of not more than

---

* Circuit judge, sitting on the Court of Appeals by assignment.

$1,000.00. A person who aids, assists, or abets in the keeping or maintaining of a gaming room, gaming table, or game, is guilty of a misdemeanor, punishable by imprisonment for not more than 2 years, or a fine of not more than $1,000.00.

"(2) This section shall not apply to a mechanical amusement device which may through the application of an element of skill reward the player with the right to replay the mechanical device at no additional cost if the mechanical amusement device is not allowed to accumulate more than 15 replays at 1 time; the device is designed so that accumulated free replays may only be discharged by reactivating the device for 1 additional play for each accumulated free replay; and the device makes no permanent record directly or indirectly of the free replays awarded."

Early in 1982, officers of the Michigan Liquor Control Commission became aware that the Sanford Eagles Club had a "draw poker" video machine in the club. This machine has five windows. When twenty-five cents is inserted in the machine, a playing card appears in each window. Below each window is a button. If a player is dissatisfied with the card first appearing in a window, he may press the button under that card and the first card will disappear and be replaced by another card.

The machine has two counters on the inside, one which keeps track of the number of quarters placed into the machine and the other which keeps track of the number of free replays erased off the machine without playing them. The device also has a key mechanism which can erase free replays without the replays being played.

Once a satisfactory hand is established, the game is played as five-card draw poker. When certain hands are obtained, credits are given which entitle the player to free plays.

On March 30, 1982, the local inspector for the MLCC, Robert Basket, and his supervisor, Donald

French, went to the Sanford Eagles Club and
played the machine. Supervisor French won 54
free games on that date.

The officers asked the bartender, Lydia Oswald,
if the games could be traded for cash. She in-
formed them that the Eagles did not pay off in
cash but only in free replays.

On May 25, 1982, the same Liquor Control Com-
mission officers returned to the club and played
the machine. After this the officers confiscated
the machine as a gambling device and issued a
complaint with the Michigan Liquor Control Com-
mission against the Sanford Eagles Club. A hear-
ing was held before Hearing Commissioner An-
drew Metcalf, Jr., who rendered an opinion on
December 1, 1982, finding the machine to be a
game "partly of skill and partly of chance" and an
unlawful gambling device under MCL 750.303(1)
and 1980 AACS R 436.1013(2). Commissioner Met-
calf also ruled that Automatic Music and Vending
Corporation could not intervene in the hearing as
it was not an involved party. The commissioner
ordered a fine of $250 and costs. He did not confis-
cate the machine.

Commissioner Metcalf's decision was upheld by
the commission on appeal in January, 1983.

Automatic Music then applied to the circuit
court for Ingham County for an order of superin-
tending control to review the actions of the com-
mission. Judge Robert Holmes Bell, in a terse
order, reversed the commission and found that
free replays do not constitute a reward and are not
gaming as defined by MCL 750.303; MSA 28.535.

The commission appealed to this Court.

Four issues are raised:

I. Whether Automatic Music may petition the circuit
court for an order of superintending control.

II. Whether a "draw poker" video game is a gaming device within the meaning of MCL 750.303(1); MSA 28.535(1).

III. Whether the statute unconstitutionally denies equal protection of the United States and Michigan Constitutions.

IV. Whether MCL 750.303; MSA 28.535 is unconstitutionally vague.

I

May Automatic Music petition the circuit court for superintending control?

We conclude that Automatic Music, while not directly a party to the dispute, was aggrieved by the action of the commission and should be allowed to intervene under GCR 1963, 711.2.

It is well settled that an order of superintending control does not supersede the use of normal appellate procedures. *Detroit v Recorder's Court Judge,* 104 Mich App 214, 222; 304 NW2d 829 (1981); GCR 1963, 711. See, also, *Beer v Fraser Civil Service Comm,* 127 Mich App 239, 242; 338 NW2d 197 (1983).

Automatic Music was not a party to the commission's administrative proceedings and did not have a right of appeal. However, it was that company's machine that was confiscated and, therefore, it was aggrieved in this action and superintending control should be available to it. *Kassab v Acho,* 125 Mich App 442, 451; 336 NW2d 816 (1983). Further, the decision in this case will affect its total business with like machines. Superintending control is a proper remedy when general policies of an inferior tribunal are being reviewed. *Detroit v Recorder's Court Judge, supra.*

We conclude that it was proper to allow Automatic Music to intervene.

II

Is a "draw poker" video game a gaming device?

MCL 750.301-750.315; MSA 28.533-28.547 is part of a statutory scheme governing gambling. The purpose of the statutory scheme is to suppress gambling, an activity determined to be "injurious to the morals and welfare of the people". *Michigan ex rel Comm'r of State Police v Nine Money Fall Games,* 130 Mich App 414, 419; 343 NW2d 576 (1983), citing *Parkes v Judge of Recorder's Court,* 236 Mich 460, 465-466; 210 NW 492 (1926). Under this particular section, it is not necessary to determine whether the game under consideration is one of skill or of chance because the statute makes no distinction as to either kind of game. *Michigan ex rel Comm'r of State Police v One Helix Game,* 122 Mich App 148, 156; 333 NW2d 24 (1982), citing *Henry v Kuney,* 280 Mich 188, 192; 273 NW 442 (1937). Gambling occurs whenever there is a chance for profit if the player of the game is skillful and lucky.

The question to be resolved in this case is whether free plays are "reward", "profit", or a "thing of value". The circuit judge decided that the right to free play is not a "reward". In so doing, he acknowledged: "The Court is not unmindful of a couple of antiquated Supreme Court decisions, dealing with different machines, under different circumstances, at a different time culturally in our nation."

MCL 750.303(2); MSA 28.535(2) was passed in 1975 and provides in part:

"(2) This section shall not apply to a mechanical amusement device which may through the application of an element of skill reward the player with the right to replay the mechanical device at no additional cost * * *."

This language clearly appears to be a response of the Legislature to *Oatman v Port Huron Chief of Police,* 310 Mich 57; 16 NW2d 665 (1944), of which the Legislature is presumed to have been aware.

While both the commission and Automatic Music agree that the "draw poker" video game allows more than 15 replays as provided in that section, it is clear that the Legislature by the enactment of § 303(2) intended to legalize machines which are games having an element of skill and where the "reward" is limited to free games and does not include pecuniary or merchandise rewards.

This was recognized by another panel of this Court in *People v Palazzolo,* 62 Mich App 140; 233 NW2d 216 (1975).

### III

Does MCL 750.303(2); MSA 28.535(2) deny equal protection of the laws under the United States and Michigan Constitutions and is it void for vagueness?

The purpose of the statute is to suppress gambling, an activity "injurious to the morals and welfare of the people". *Michigan ex rel Comm'r of State Police v Nine Money Fall Games, supra,* p 419.

In the present case, we are not dealing with a suspect class or a fundamental personal right and the test is whether the legislation bears a reasonable relationship between the statutory classification and the public purpose in enacting the statute. *Shavers v Attorney General,* 402 Mich 554, 612-614; 267 NW2d 72 (1978).

Automatic Music urges that by allowing machines with 15 or less replays to be exempt and by denominating this game, a game of mixed skill

and chance, a per se gambling device while treating other games of skill and chance as legal is a denial of equal protection.

It is clear that the Legislature by the passage of subsection 303(2) clearly amended the then law of Michigan by legalizing those machines which require an element of skill. The difficulty lies in the balance of the section which reads:

"* * * if the mechanical amusement device is not allowed to accumulate more than 15 replays at 1 time; the device is designed so that accumulated free replays may only be discharged by reactivating the device for 1 additional play for each accumulated free replay; and the device makes no permanent record directly or indirectly of the free replays awarded."

This panel finds this subsection vague and arbitrary as did the *Palazzolo* panel. We are unable to fathom what the Legislature meant by 15 games. What is meant by one replay? What is the purpose of prohibiting a "knock off" button or making recordation of free games illegal? Why is 15 free games legal and 16 free games illegal?

These are all questions which in our opinion make this portion of the act unconstitutional.

In *People v Austin,* 301 Mich 456, 463; 3 NW2d 841 (1942), the Court said:

" '[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' *Connally v General Construction Co,* 269 US 385, 391; 46 S Ct 126; 70 L Ed 322 (1926)."

We therefore hold that MCL 750.303(2); MSA

28.535(2) is applicable to this case and is constitutional insofar as it legalizes mechanical amusement devices which through the application of an element of skill reward the player with the right to replay the mechanical device at no additional cost.

The balance of that subsection we find to be arbitrary and vague and, therefore, unconstitutional.

We affirm the circuit court.

D. E. HOLBROOK, JR., P.J., concurred.

CYNAR, J. *(concurring).* I concur with the majority and also feel compelled to write separately because we are asked to rule on a most trifling matter. Whatever the public attitude may have been in 1944, since then we have seen the growth of horse racing and other gambling, the State of Michigan sponsoring a multi-million dollar gambling program, and not only bingo but earlybird bingo being approved. Nonetheless, the Michigan Liquor Control Commission sent its investigator to the Fraternal Order of Eagles, supplied with quarters, to play the machine. The investigator played the machine and obtained some replays. The machine was confiscated because it was not a game of skill, gave replays and was thus determined to be a gambling device. I can picture the investigators, pursuant to their traveling orders, attending charitable and community events, scientifically evaluating various devices for violations. Oh, what victories will be gained by locating and confiscating devices which reward the player with a replay. With this in mind, I find the majority's reasoning compelling for constitutional as well as practical reasons.