AUTOMATIC MUSIC AND VENDING CORPORATION v LIQUOR
CONTROL COMMISSION

Docket No. 76285. Argued October 9, 1986 (Calendar No. 15). Decided
November 24, 1986.

Officers of the Liquor Control Commission confiscated a draw
poker machine as a gambling device from and brought a
complaint before the Liquor Control Commission against the
Fraternal Order of Eagles, Sanford Aerie, No. 3677. The com-
mission found the machine to be an illegal gambling device
under MCL 750.303; MSA 28.535, and the Liquor Control
Commission Appeal Board affirmed. Automatic Music and
Vending Corporation, the owner of the machine, and the San-
ford Eagles Club, brought an action in the Ingham Circuit
Court seeking superintending control. The court, Robert
Holmes Bell, J., reversed, finding that free replays do not
constitute a reward and are not gaming as statutorily defined.
The Court of Appeals, Cynar and Gillespie, JJ. (D. E. Hol-
brook, Jr., P.J., concurring), affirmed, holding that the draw
poker machine was not a gaming device and that MCL
750.303(2); MSA 28.535(2) was unconstitutional (Docket No.
71889). The commission appeals.

In a unanimous opinion by Chief Justice Williams, the
Supreme Court held:

The draw poker machine at issue in this case is an illegal
gaming device under MCL 750.303(1); MSA 28.535(1) and does
not qualify for an exemption under MCL 750.303(2); MSA
28.535(2). The statutory exemption is constitutional.

1. Gaming (or gambling) requires the presence of three
elements: price or consideration, chance, and prize or reward. A
machine which encompasses these elements is a machine used
for gaming under MCL 750.303(1); MSA 28.535(1). The draw
poker machine at issue in this case is a gambling device as
defined by the statute. It requires money to play, employs

References

Am Jur 2d, Gambling § 10 et seq.
Coin-operated pinball machine or similar device, played for amuse-
ment only or confining reward to privilege of free replays, as
prohibited or permitted by antigambling laws. 89 ALR2d 815.

chance in the random distribution of cards, and provides a reward in the form of free replays. The machine does not qualify as an exempt amusement device because it allows the accumulation of more than fifteen replays, allows free replays to be discharged without actually being played, and keeps a record of the number of free replays awarded, contrary to the provisions of MCL 750.303(2); MSA 28.535(2).

2. The exemption provided under the statute for certain devices does not deny equal protection. The requirements for exemption are reasonably related to a legislative goal. A classification having some reasonable basis does not offend the Equal Protection Clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. Nor is the statute unconstitutionally vague. The meanings of the enumerated exemption requirements are obvious and comprehensible.

Reversed.

141 Mich App 458; 367 NW2d 413 (1985) reversed.

1. LICENSES — GAMING DEVICES — DRAW POKER MACHINES.

A draw poker machine which required insertion of money to play, employed chance in the random distribution of playing cards, and provided a reward in the form of free replays, and which did not qualify as an exempt amusement device because it allowed the accumulation of more than fifteen replays, allowed free replays to be discharged without actually being played, and kept a permanent record of the number of free replays awarded was an illegal gaming device (MCL 750.303[1], [2]; MSA 28.535[1], [2]).

2. CONSTITUTIONAL LAW — EQUAL PROTECTION — VAGUENESS — GAMING DEVICES — AMUSEMENT DEVICES.

The provision of the Penal Code which exempts from the statutory proscription of gaming devices mechanical amusement devices which, through application of an element of skill, reward a player with free replays of the device, and which do not allow more than fifteen replays or the discharge of free replays without actually being played or keep a permanent record of the replays awarded is not unconstitutionally vague (US Const, Am XIV; Const 1963, art 1, § 17; MCL 750.303[1], [2]; MSA 28.535[1], [2]).

*Cooper & Fink* (by *Daniel S. Cooper, P.C., Mark J. Zausmer,* and *David H. Fink, P.C.*) for the plaintiffs.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Frank J. Pipp, Larry F. Brya, Kevin Thom,* and *James L. Stropkai,* Assistant Attorneys General, for the defendant.

WILLIAMS, C.J. The issue in this case is whether a draw poker machine is an illegal gaming device under MCL 750.303; MSA 28.535. We hold that the machine in question is an illegal device under that statute. We also reject plaintiff's challenges to the constitutionality of the statute.

### FACTS

The facts are accurately and concisely summarized in the opinion of the Court of Appeals, 141 Mich App 458, 461-462; 367 NW2d 413 (1985):

> Early in 1982, officers of the Michigan Liquor Control Commission became aware that the Sanford Eagles Club had a "draw poker" video machine in the club. This machine has five windows. When twenty-five cents is inserted in the machine, a playing card appears in each window. Below each window is a button. If a player is dissatisfied with the card first appearing in a window, he may press the button under that card and the first card will disappear and be replaced by another card.
>
> The machine has two counters on the inside, one which keeps track of the number of quarters placed into the machine and the other which keeps track of the number of free replays erased off the machine without playing them. The device also has a key mechanism which can erase free replays without the replays being played.
>
> Once a satisfactory hand is established, the game is played as five-card draw poker. When certain hands are obtained, credits are given which entitle the player to free plays.

On March 30, 1982, the local inspector for the MLCC, Robert Basket, and his supervisor, Donald French, went to the Sanford Eagles Club and played the machine. Supervisor French won 54 free games on that date.

The officers asked the bartender, Lydia Oswald, if the games could be traded for cash. She informed them that the Eagles did not pay off in cash but only in free replays.

On May 25, 1982, the same Liquor Control Commission officers returned to the club and played the machine. After this the officers confiscated the machine as a gambling device and issued a complaint with the Michigan Liquor Control Commission against the Sanford Eagles Club. A hearing was held before Hearing Commissioner Andrew Metcalf, Jr., who rendered an opinion on December 1, 1982, finding the machine to be a game "partly of skill and partly of chance" and an unlawful gambling device under MCL 750.303(1) and 1980 AACS R 436.1013(2). Commissioner Metcalf also ruled that Automatic Music and Vending Corporation could not intervene in the hearing as it was not an involved party. The commissioner ordered a fine of $250 and costs. He did not confiscate the machine.

Commissioner Metcalf's decision was upheld by the commission on appeal in January, 1983.

Automatic Music then applied to the circuit court for Ingham County for an order of superintending control to review the actions of the commission. Judge Robert Holmes Bell, in a terse order, reversed the commission and found that free replays do not constitute a reward and are not gaming as defined by MCL 750.303; MSA 28.535.

The Court of Appeals affirmed the order of the circuit court and held: (1) that the draw poker machine was not a gaming device, and (2) that MCL 750.303(2); MSA 28.535(2) was unconstitutional. This Court granted leave to appeal, 424 Mich 877 (1986).

I. STATUTORY PROVISIONS

The plaintiff, the Fraternal Order of Eagles, holds a club license issued by the Michigan Liquor Control Commission. As the holder of a club license, plaintiff is subject to regulation 1980 AACS, R 436.1013 which provides in part:

> A licensee shall not allow any gambling devices on the licensed premises which are prohibited by the statutes of this state.

MCL 750.303; MSA 28.535, the statute which discusses gambling devices, provides in relevant part:

> (1) A person who for hire, gain, or reward, keeps or maintains a gaming room, gaming table, game of skill or chance, or game partly of skill and partly of chance, used for gaming, or who permits a gaming room, or gaming table, or game to be kept, maintained, or played on premises occupied or controlled by the person, is guilty of a misdemeanor, punishable by imprisonment for not more than 2 years, or a fine of not more than $1,000.00. . . .
>
> (2) This section shall not apply to a mechanical amusement device which may through the application of an element of skill reward the player with the right to replay the mechanical device at no additional cost if the mechanical amusement device is not allowed to accumulate more than 15 replays at 1 time; the device is designed so that accumulated free replays may only be discharged by reactivating the device for 1 additional play for each accumulated free replay; and the device makes no permanent record directly or indirectly of the free replays awarded.

*A. ANALYSIS OF MCL 750.303(1); MSA 28.535(1)*

Since MCL 750.303(1); MSA 28.535(1) does not

define the term "gaming,"[1] we refer to the common-law definition which requires the presence of three elements: (1) price or consideration, (2) chance, and (3) prize or reward. 89 ALR2d 815, 827. See also *State v Pinball Machines,* 404 P2d 923, 925 (Alas, 1965); *Farina v Kelly,* 147 Conn 444, 449-450; 162 A2d 517 (1960); *State v Paul,* 43 NJ Super 396, 402-404; 128 A2d 737 (1957); *Westerhaus Co v Cincinnati,* 165 Ohio St 327, 335-336; 135 NE2d 318 (1956). Therefore, a machine which encompasses these three elements is a machine "used for gaming" under MCL 750.303(1); MSA 28.535(1).

With respect to the draw poker machine which is the subject of this dispute, both parties agree that consideration, in the form of the money needed to play the game, and chance, in the random distribution of the cards, are present. The more controversial issue is whether or not a free game constitutes a reward or prize. This issue has previously been considered and decided by this Court.

In *Oatman v Port Huron Chief of Police,* 310 Mich 57, 59; 16 NW2d 665 (1944), we held that "[s]ince these free plays, the testimony shows, would ordinarily cost the player five cents each, the opportunity to have free plays is a thing of value." See also *Henry v Kuney,* 280 Mich 188, 192; 273 NW 442 (1937).

> "[W]here there is an element of chance in the operation of the slot machine—where the one who plays the machine stands to win or lose money, *trade checks,* or prizes, by a chance,—the machine is a gambling device . . . ." [Emphasis added.]

---

[1] In accordance with the generally accepted view that the terms "gaming" and "gambling" are synonymous, they are used interchangeably. See, e.g., Black's Law Dictionary (5th ed), which defines "gaming" as "the practice or art of gambling."

We see no reason to reverse this decision as we are not persuaded that changes in the amusement machine industry have rendered the statute meaningless.[2] Therefore, the draw poker machine is a gambling device under MCL 750.303(1); MSA 28.535(1).

### B. RELEVANCE OF THE STATUTORY EXCEPTION

In 1975, the Legislature amended MCL 750.303; MSA 28.535 and added subsection 2. That section provides for the exemption of certain devices from subsection 1. The exemption states that it

> *shall* not apply to a mechanical amusement device which may through the application of an element of skill reward the player with the right to replay the mechanical device at no additional cost if the mechanical amusement device is not allowed to accumulate more than 15 replays at 1 time; the device is designed so that accumulated free replays may only be discharged by reactivating the device for 1 additional play for each accumulated free replay; and the device makes no permanent record directly or indirectly of the free replays awarded.

The draw poker game at issue does not qualify for this exemption because: (1) it allows the accumulation of more than fifteen replays, (2) there is a button on the machine which can discharge all the free replays, and (3) there is a permanent

---

[2] Numerous cases decided since the *Oatman* decision have reached the conclusion that a free replay is a thing of value. See, e.g., *State v Pinball Machines, supra* at 926; *State v Lake Geneva Lanes,* 22 Wis 2d 151, 153-154; 125 NW2d 622 (1963); *Worl v State of Indiana,* 243 Ind 116, 122; 183 NE2d 594 (1962); *Farina, supra* at 449-450; *State v Paul, supra* at 402-404; *State v Sandfer,* 93 Okla Crim 228, 234-235; 226 P2d 438 (1951); *State v Doe,* 242 Iowa 458, 463-464; 46 NW2d 541 (1951). See also *Commonwealth v Two Electronic Poker Game Machines,* 502 Pa 186, 195-196; 465 A2d 973 (1983) (holding a free game in the presence of other factors such as a "knock off" button and a meter to record unplayed free games was a thing of value).

record kept in the machine of the number of free replays awarded.

## II. CONSTITUTIONALITY OF THE STATUTORY EXCEPTION

The Court of Appeals held that MCL 750.303(2); MSA 28.535(2) unconstitutionally denies equal protection and is unconstitutionally vague. We disagree with both findings.

### A. EQUAL PROTECTION CHALLENGE

The Court of Appeals correctly stated that the appropriate test for an equal protection claim under both the Michigan and the United States Constitutions is whether the legislation bears a reasonable relationship to a legitimate goal of the Legislature. As we stated in *Johnson v Harnischfeger Corp,* 414 Mich 102, 114; 323 NW2d 912 (1982), in challenging a statute on equal protection grounds, a plaintiff must show that the classifications created "are so arbitrary that they cannot be supported under any state of facts, either known or which could reasonably be assumed." See also *Shavers v Attorney General,* 402 Mich 554, 613; 267 NW2d 72 (1978); *Mutchall v Kalamazoo,* 323 Mich 215, 227; 35 NW2d 245 (1948).

It appears that the Court of Appeals in this case found that the distinction made in the statute between machines which allow fifteen or fewer free replays and those which allow more was unconstitutionally arbitrary. We cannot agree. The Legislature may reasonably believe that the larger the number of free replays available, the greater the incentive to make cash payoffs. As the existence of such payoffs may be difficult to prove, the Legislature strove to avoid the problem simply by allowing only a small number of replays to accu-

mulate on these machines. The fact that the Legislature picked a particular number as the dividing line is a matter purely within its discretion.

As we have noted in the past, "A classification having some reasonable basis does not offend [the Equal Protection] clause merely because it is not made with mathematical nicety or because in practice it results in some inequality." *Naudzius v Lahr*, 253 Mich 216, 222-223; 234 NW 581 (1931).

### B. VAGUENESS CLAIM

In its review of MCL 750.303(2); MSA 28.535(2), the Court of Appeals also found that the language used was vague. The Court stated:

> We are unable to fathom what the Legislature meant by 15 games. What is meant by one replay? What is the purpose of prohibiting a "knock off" button or making recordation of free games illegal. [141 Mich App at 466.]

We find these objections unpersuasive. Obviously, one replay is a single game awarded by the machine. A "knock off" button is a button which allows free replays to be discharged without actually being played thus violating that section of the statute which requires free replays to be discharged only by reactivating the machine for one additional play. The statutory requirement that exempt machines keep no permanent record of the free replays is likewise perfectly comprehensible.[3]

---

[3] In prohibiting "knock off" buttons and the recording of free replays, the Legislature was attempting to make it more difficult for the owners of machines to make cash payoffs. See, e.g., *United States v One Bally "Barrel-O-Fun"*, 224 F Supp 794, 797-798 (MD Pa, 1963):

> "The knock-off button for releasing free plays and the meter for recording the free plays released . . . serve no useful purpose on a machine designed merely for amusement and they

We do not find the language of the statute uncon-
stitutionally vague.

### CONCLUSION

We hold that the draw poker machine at issue is
an illegal gaming device under MCL 750.303(1);
MSA 28.535(1) and that it does not qualify for an
exception under MCL 750.303(2); MSA 28.535(2).
We hold the statutory exception constitutional.
The decision of the Court of Appeals is reversed.

LEVIN, BRICKLEY, CAVANAGH, BOYLE, RILEY, and
ARCHER, JJ., concurred with WILLIAMS, C.J.

increase the cost of the machine without increasing the income
from the machine when used for amusement." [Quoting *Turner
v United States,* 9 AFTR2d 2031 (1962).]

*Peachey v Boswell,* 240 Ind 604, 614; 167 NE2d 48 (1960) ("It seems
apparent that it would be much more improbable that *unrecorded*
free games might be exchanged for money or other things of
value . . . ."). Emphasis in the original; citing *Tinder v Music Oper-
ating, Inc,* 237 Ind 33, 55; 142 NE2d 610 (1957); *Eads v J & J Sales
Corp,* 257 Ind 485, 487; 275 NE2d 802 (1971), suggesting that a device
which records replays awarded may be used to compute payoffs.