KASSAB v ACHO

Docket No, 60135. Submitted August 18, 1982, at Detroit.—Decided
    May 3, 1983.

Khalid and Issam Kassab own a store on East Seven Mile Road in
    the City of Detroit and hold a specially designated distributor's
    (SDD) liquor license in connection with that store. Yalda Acho
    owns a store on East Seven Mile Road directly across the street
    from the Kassab's store. Acho sought an SDD license for his
    store, arguing that, because his store was separated from the
    Kassabs' store by East Seven Mile Road, he was eligible for a
    license under the major thoroughfare exception to the rule
    prohibiting SDD licensees within one-half mile of each other.
    The Liquor Control Commission denied the license. Acho re-
    quested an appeal hearing before the commission pursuant to
    the commission's rules. Because the Kassabs owned the nearest
    SDD licensed outlet, the commission sent a notice of hearing to
    the Kassabs and offered them the opportunity to appear and
    argue before the commission. The Kassabs appeared at the
    hearing with their attorney. East Seven Mile Road at the point
    it separates the two stores has four lanes, two moving lanes
    and two parking lanes. The original denial of the Acho license
    was on the basis that the major thoroughfare exception re-
    quires four lanes of moving traffic to be applicable. Subsequent
    to the appeal hearing, the commission received two letters from
    the Detroit police chief to the effect that parking was to be
    banned on that section of East Seven Mile Road and the road
    was a major thoroughfare. The Kassabs were not given notice
    of the commission's receipt of the police chief's letters. The
    commission granted the Acho license on the basis that the

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 45 Am Jur 2d, Intoxicating Liquors § 164.
[2, 3] 45 Am Jur 2d, Intoxicating Liquors § 156.
[3] 45 Am Jur 2d, Intoxicating Liquors § 160.
[4] 2 Am Jur 2d, Administrative Law § 764.
[5-7] 2 Am Jur 2d, Administrative Law § 307.
[6] 73 Am Jur 2d, Statutes §§ 145, 146, 194.
[7] 73 Am Jur 2d, Statutes §§ 155-157.

police chief's letters established the status necessary for application of the major thoroughfare exception.

The Kassabs filed a petition in Wayne Circuit Court seeking review of the commission's determination pursuant to the provisions of the Administrative Procedures Act, naming Acho and the commission as respondents. Subsequent to the initiation of the circuit court review, the commission discovered that the parking ban was temporary and could not have been made permanent without city council approval. The commission moved in circuit court for remand to the commission for further consideration. The Kassabs moved for remand, for a preliminary injunction, or for advancing the matter for immediate hearing. Robert J. Colombo, J., denied the motions to remand and ordered that the matter be set for hearing. Following a hearing, Judge Colombo affirmed the commission's order granting the Acho license, holding that at the time the license was granted East Seven Mile Road was a four-lane major thoroughfare and that the commission's rules did not specifically provide that a parking lane could not be considered to be a traffic lane. The Kassabs appeal. *Held:*

1. Circuit court review of the commission's determination was pursuant to the provisions of the Administrative Procedures Act. As such, the Kassabs, who were interested parties in the contested case before the commission, have standing to seek review of the commission's decision in circuit court.

2. While the police chief's letters were properly received into evidence by the commission and considered by the commission in reaching its determination, the commission should have given notice to the Kassabs of its receipt of the letters and given the Kassabs the opportunity to respond. Since the letters failed to indicate the temporary nature of the parking ban, the procedural irregularity resulting from the failure of the commission to notify the Kassabs of its receipt of those letters materially prejudiced the Kassabs. Accordingly, the circuit court clearly erred by affirming the commission's decision.

3. Since it should have been clear to the circuit court that the commission's record was incomplete or inadequate with respect to the parking status on East Seven Mile Road, the circuit court was obligated to remand the matter to the commission for further determination by the commission.

4. The commission's rule clearly contemplates that a major thoroughfare shall have four lanes of traffic and that parking lanes may not be considered to be traffic lanes.

Reversed and remanded to the Liquor Control Commission.

1. ADMINISTRATIVE LAW — JUDICIAL REVIEW — LIQUOR CONTROL COMMISSION — ADMINISTRATIVE PROCEDURES ACT.

Judicial review of a determination by the Liquor Control Commission relative to the issuance of a liquor license is pursuant to the contested case provisions of the Administrative Procedures Act (MCL 24.201 *et seq.;* MSA 3.560[101] *et seq.*).

2. ADMINISTRATIVE LAW — INTERESTED PARTIES — JUDICIAL REVIEW — LIQUOR CONTROL COMMISSION — ADMINISTRATIVE PROCEDURES ACT.

The holder of a SDD liquor license at a location near to the location of a proposed new SDD liquor license is an interested aggrieved party in the proceedings before the Liquor Control Commission relative to the issuance of the new license and as such the holder of the prior license may seek judicial review of the commission's determination to grant the new license pursuant to the contested case provisions of the Administrative Procedures Act (MCL 24.301; MSA 3.560[201]).

3. ADMINISTRATIVE LAW — EVIDENCE — NOTICE OF HEARING — LIQUOR CONTROL COMMISSION — ADMINISTRATIVE PROCEDURES ACT.

A letter from the local police agency concerning the issuance of a new liquor license may be considered by the Liquor Control Commission in its determination of whether the new liquor license should be issued; however, where the proceedings before the commission involve a contested case and the letter is not introduced at the evidentiary hearing before the commission, the commission must give notice of the receipt of such letter to all interested parties and afford such parties the opportunity to respond to the content of the letter (MCL 24.282; MSA 3.560[182]).

4. ADMINISTRATIVE LAW — JUDICIAL REVIEW — INADEQUATE RECORD — ADMINISTRATIVE PROCEDURES ACT.

A circuit court reviewing the determination of an administrative agency pursuant to the provisions of the Administrative Procedures Act must remand the matter to the administrative agency upon a determination that the agency's record is incomplete or inadequate (MCL 24.305; MSA 3.560[205]).

5. ADMINISTRATIVE LAW — ADMINISTRATIVE RULES — JUDICIAL CONSTRUCTION.

The rules of statutory construction apply when an administrative rule is being construed (MCL 24.232; MSA 3.560[132]).

6. STATUTES — ADMINISTRATIVE RULES — JUDICIAL CONSTRUCTION.

Judicial interpretation or construction of the terms of a statute or administrative rule will be avoided where the statute or rule is unambiguous on its face; however, if ambiguity exists, effect must be given to the intention of the Legislature or the administrative agency in enacting or promulgating the statute or rule.

7. STATUTES — ADMINISTRATIVE RULES — JUDICIAL CONSTRUCTION.

A court, in order to resolve a perceived ambiguity in a statute or administrative rule, will look to the object of the statute or rule and the evil or mischief which it is designed to remedy and will apply a reasonable construction which best accomplishes the purpose of the statute or rule.

*Lawson & Lawson, P.C.* (by *David M. Lawson*), for Khalid and Issam Kassab.

*Strefling & Brode, P.C.* (by *Neil A. Strefling*), for Yalda Acho.

Before: BRONSON, P.J., and MACKENZIE and K. N. SANBORN,* JJ.

K. N. SANBORN, J. Khalid and Issam Kassab appeal as of right from a September 11, 1981, circuit court order affirming the Liquor Control Commission's March 10, 1980, order granting Yalda Acho a specially designated distributor's (SDD) liquor license.

The Kassabs own the Holbrook Party Store located at 1721 East Seven Mile Road in Detroit. They hold an SDD liquor license in connection with their store. Acho owns a store at 1700 East Seven Mile Road, directly across the street from the Kassabs' store. On November 23, 1977, Acho filed an application for an SDD license. Acho argued that, because his store was separated from the Kassabs' store by East Seven Mile Road, he was eligible for a waiver of the rule requiring that

---

* Circuit judge, sitting on the Court of Appeals by assignment.

SDD outlets be at least one-half mile apart under the exception contained in 1979 AC, R 436.1133(c), which states in pertinent part:

"An application for a new specially designated distributor license, or for the transfer of location of an existing specially designated distributor license, shall not be approved by the commission where there is an existing specially designated distributor licensed located within 2,640 feet. The method of measurement shall be as prescribed in section 17a of the act. This rule may be waived by the commission for 1 of the following:

* * *

"(c) Where the proposed location and the existing specially designated distributor's licensed establishment *are separated by a major thoroughfare of not less than 4 lanes of traffic."* (Emphasis added.)

On October 15, 1979, the commission denied Acho a license. The commission found that Acho was not eligible for a waiver of the half-mile rule because East Seven Mile Road could not be considered a "major thoroughfare of not less than 4 lanes of traffic" since it was "a 4 lane road with 2 moving lanes and 2 parking lanes".

On October 23, 1979, Acho requested an appeal hearing pursuant to 1979 AC, R 436.1925(2), which states in pertinent part:

"Applications for a license issued under the act or commission rules shall be reviewed by the administrative commissioners. *If a license application is denied, the aggrieved license applicant may request an appeal hearing, and the commission shall grant the hearing."* (Emphasis added.)

Acho's request for an appeal hearing was granted as required by that rule. Because the Kassabs owned the nearest SDD outlet, the commission

sent a notice of the appeal hearing to them and offered them an opportunity to appear and argue before the commission at the appeal hearing. The Kassabs did appear with their attorney at the hearing held on December 20, 1979.

The evidence at the hearing established that the portion of East Seven Mile Road in question was a major thoroughfare. However, two lanes on each side were designated 24-hour parking lanes. The attorney representing the commission at the hearing argued that the parking lanes left East Seven Mile Road a major thoroughfare with only two lanes of traffic. As such, the waiver of the half-mile rule did not apply. He argued that the purpose of the "half-mile rule" was to avoid saturation of an area with SDD licensed outlets. The purpose of the "major thoroughfare exception" was to allow SDD outlets on each side of a road that is so wide and busy that it is impossible to cross. The commission's attorney argued that the purpose for the waiver did not exist in the present case.

After the hearing, Detroit Police Chief William Hart wrote two letters to the commission. In the first letter, Chief Hart advised the commission that East Seven Mile Road was a major four-lane thoroughfare with all four lanes used for traffic. In the second letter, Chief Hart advised the commission that the 24-hour parking on the 1700 block of East Seven Mile Road would be prohibited beginning February 25, 1980.

On March 10, 1980, the commission granted Acho an SDD license, relying largely on the letters submitted by Chief Hart. Three days later, the Kassabs filed a petition for review of the commission's decision in the Wayne County Circuit Court or, in the alternative, for a writ of mandamus. On

March 19, 1980, the Kassabs also petitioned the commission for reconsideration. The commission did reinvestigate the matter and found that the parking ban was temporary and that parking on the two outside lanes and been restored.

On April 16, 1980, the commission filed a motion in the circuit court to remand this matter to the commission for further proceedings. That motion stated, in part, that subsequent to the issuance of Acho's license, the commission had discovered that its decision was affected by a substantial and material error of fact and law in that Acho's business location is in fact and law not separated by a major thoroughfare of four lanes of traffic as required under 1979 AC, R 436.1133(c). The circuit court denied the motion.

About one year later, the Kassabs filed a motion seeking, in the alternative, remand to the commission, a preliminary injunction, or advancing of the matter for immediate hearing. On May 1, 1981, the circuit court ordered that the matter be set for hearing.

Evidence presented at the May 14, 1981, circuit court hearing showed that the elimination of parking lanes on East Seven Mile Road was temporary and could not have been made permanent without city council approval. The commission's attorney argued that the evidence available to the commission at the time the license was granted, *i.e.,* Chief Hart's letter that parking had been prohibited, supported the commission's decision. However, he requested that the circuit judge remand the case to the commission for further fact-finding and reconsideration if the court found that the evidence before the commission was incomplete.

In the order affirming the commission's decision to grant Acho an SDD license, the circuit court judge said:

"This court finds that on March 10, 1980, Seven Mile Road in this immediate area was a four-lane major thoroughfare with four lanes of traffic and that the Michigan LCC's findings and certified record on appeal do not show that the LCC abused its discretion and that its decision of March 10, 1980, is supported by the certified record on appeal as a valid exercise of its discretion."

Furthermore, the circuit judge found that, regardless of the parking situation, East Seven Mile Road was a four-lane thoroughfare within the meaning of 1979 AC, R 436.1133(c). The judge also found that the parking situation should not be considered because the commission's rule did not expressly provide that a parking lane could not be considered a traffic lane.

The Kassabs raise four issues in this appeal: (1) whether the appeal of the commission's decision was governed by the Administrative Procedures Act, MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.;* (2) whether the circuit court clearly erred by finding that the commission's decision to grant the license was supported by the record; (3) whether the circuit court erred by denying the commission's motion to remand; and (4) whether the circuit court clearly erred by finding that the meaning of "four lanes of traffic", as used in 1979 AC, R 436.1133(c), includes parking lanes.

I

The circuit court stated that this case was procedurally governed by both the APA and the appeal from state agency provisions of the Revised Judicature Act, MCL 600.631; MSA 27A.631. We find that only the APA governs.

In 3 Honigman & Hawkins, Michigan Court

Rules Annotated (2d ed), p 611, the authors discuss the scope of MCL 600.631; MSA 27A.631:

"An appeal from an administrative determination or opinion may be taken to the circuit court under RJA § 631 and sub-rule 706.1 if the following requirements are met:

"(1) The statutes applicable to the administrative body from which the appeal is sought must confer the power to make rules.

"(2) The administrative determination or opinion must be one for which no appeal or judicial review is *otherwise provided by statute.*

"(3) The administrative body must be a 'state board, commission or agency' within the meaning of RJA § 631.

"(4) Administrative remedies must have been 'exhausted'." (Emphasis added.)

The authors state that the commission, among other agencies, has a statutory appeal procedure. Therefore, § 631 does not govern.

Subsection 3(3) of the APA, MCL 24.203; MSA 3.560(103)(3), defines a "contested case" as:

"[A] proceeding, including but not limited to rate-making, price-fixing and *licensing,* in which determination of the legal rights, duties or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing." (Emphasis added.)

The licensing in the case at bar was a "contested case", since, upon the initial denial, an evidentiary hearing was mandated by the commission's own rules. 1979 AC, R 436.1925.

Section 101 of the APA provides that appeals of contested cases are to be heard by the courts:

"When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law. Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought. A preliminary, procedural or intermediate agency action or ruling is not immediately reviewable, except that the court may grant leave for review of such action if review of the agency's final decision or order would not provide an adequate remedy." MCL 24.301; MSA 3.560(201).

Acho argued below that the Kassabs were not parties to this contested case, and, thus, even if the APA was applicable, the Kassabs lacked standing to seek judicial review.

Subsection 5(3) of the APA defines "party" as follows:

" 'Party' means a person or agency named or admitted or properly seeking and entitled of right to be admitted, as a party in a contested case." MCL 24.205(3); MSA 3.560(105)(3).

Although Acho was the named party in this licensing dispute, the Kassabs had an interest in this matter because they were owners of an SDD outlet within one-half mile of Acho's proposed location. Furthermore, the LCC recognized this interest by giving the Kassabs notice of Acho's hearing and an opportunity to appear and be heard at that hearing. The Kassabs did appear and argued against the issuance of the license. Therefore, they were "admitted as parties" by the commission. Moreover, the Kassabs were also persons

aggrieved within the meaning of § 101 of the APA, as quoted above.

Section 103 of the APA provides that: "A petition for review shall be filed in the circuit court for the county where petitioner resides or has his or her principal place of business * * *." MCL 24.303; MSA 3.560(203).

Therefore, the Kassabs properly sought review in circuit court as parties or aggrieved persons of this contested administrative licensing action in their status as parties to or persons aggrieved by the commission's determination. We agree with Acho that a writ of mandamus, plaintiffs' alternative action, was not properly before the circuit court as the Kassabs had an adequate remedy pursuant to the APA. GCR 1963, 711, 714.

## II

The scope of the circuit court's review of the administrative decision in this matter was governed by § 106 of the APA, MCL 24.306; MSA 3.560(206), which states:

"(1) Except when a statute or the constitution provides for a different scope of review, the court shall hold unlawful and set aside a decision or order of an agency if substantial rights of the petitioner have been prejudiced because the decision or order is any of the following:

"(a) In violation of the constitution or a statute.

"(b) In excess of the statutory authority or jurisdiction of the agency.

"(c) Made upon unlawful procedure resulting in material prejudice to a party.

"(d) Not supported by competent, material and substantial evidence on the whole record.

"(e) Arbitrary, capricious or clearly an abuse or unwarranted exercise of discretion.

"(f) Affected by other substantial and material error of law.

"(2) The court, as appropriate, may affirm, reverse or modify the decision or order or remand the case for further proceedings."

The Kassabs argue that reversal of the commission's order granting a license to Acho was mandated in this case because (1) the commission's decision was made upon unlawful procedure, resulting in material prejudice to them, (2) the commission's decision was not supported by competent evidence, and (3) the commission's decision was affected by other substantial and material errors of law. The Kassabs' major contention is that the commission's reliance on Chief Hart's letters was procedurally erroneous and that those letters constituted incompetent evidence. The Kassabs argue that because the commission received Chief Hart's letters after the hearing, the commission should have sent them notice of those letters and an opportunity to refute them.

To support their argument, the Kassabs rely on §§ 75 and 82 of the APA, provisions governing the presentation of evidence in a contested administrative case. Section 75 states in pertinent part:

"In a contested case the rules of evidence as applied in a nonjury civil case in circuit court shall be followed as far as practicable, but an agency may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent men in the conduct of their affairs." MCL 24.275; MSA 3.560(175).

The Kassabs contend that Chief Hart's letters were not competent evidence pursuant to § 75. We disagree.

1979 AC, R 436.1105 lists the factors the com-

mission shall consider in determining whether an applicant should be issued a license. One such factor is the opinion of the local law enforcement agency with regard to the proposed business. Therefore, while Chief Hart's letters were not introduced at the hearing, they could be considered by the commission.

Nevertheless, we agree with the Kassabs' argument that they should have received notice and an opportunity to respond to Chief Hart's letters prior to the commission's decision. Section 82 of the APA states in pertinent part:

"Unless required for disposition of an ex parte matter authorized by law, a member or employee of an agency assigned to make a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except on notice and opportunity for all parties to participate. This prohibition begins at the time of the notice of hearing." MCL 24.282; MSA 3.560(182).

Thus, when the commission received Chief Hart's letters, which addressed the major factual issue, the Kassabs, as parties to this contested case, were entitled to notice of those letters and an opportunity to respond to them. Because the police chief's letters did not indicate that the parking ban was temporary and had not been approved by the city council, we find that the Kassabs were materially prejudiced by this procedural irregularity. Thus, the circuit court clearly erred by affirming the commission's decision. GCR 1963, 517.1.

### III

The Kassabs next argue that the circuit court

should have remanded this case to the commission as the agency had requested. The Kassabs rely on § 105 of the APA to support their argument. That provision states:

"If timely application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that an inadequate record was made at the hearing before the agency or that the additional evidence is material, and that there were good reasons for failing to record or present it in the proceeding before the agency, the court *shall* order the taking of additional evidence before the agency on such conditions as the court deems proper. The agency may modify its findings, decision or order because of the additional evidence and shall file with the court the additional evidence and any new findings, decision or order, which shall become part of the record." MCL 24.305; MSA 3.560(205) (emphasis added).

We agree that remand to the commission was the appropriate action in this case, either at the time the commission moved for remand or after the circuit court took additional evidence at the hearing. We find that the evidence that the parking ban on East Seven Mile Road was temporary in nature was material to the commission's determination to grant a license in this matter. The commission itself admitted it was not fully apprised of the facts regarding the parking ban along East Seven Mile Road when it rendered its decision.

The language of § 105 is clear. Once a reviewing court knows that an administrative agency's record was incomplete or inadequate, the court is mandated to remand the matter. The use of the word "shall" in § 105 is not permissive and did not give the circuit court discretion in this regard. See

*Law Department Employees Union v City of Flint,*
64 Mich App 359, 368; 235 NW2d 783 (1975).

### IV

The Kassabs' final argument is that the lower
court clearly erred in its interpretation of the
language of 1979 AC, R 436.1133(c). The lower
court relied on *Mallchok v Liquor Control Comm,*
72 Mich App 341; 249 NW2d 415 (1976), to hold
that the commission could not consider curb-side
parking as a factor because the commission had
not promulgated a specific rule expressing that
policy.

In *Mallchok,* the commission had denied that
plaintiff's application for an SDD license based on
the *unwritten policy* that no new license would be
granted for a location within one-half mile of the
location of another licensee. This Court found that
although the commission has statutory authority
to issue licenses in its discretion, MCL 436.17;
MSA 18.988, that discretion is limited by the
requirement that the commission promulgate its
policies as agency rules. MCL 436.7; MSA 18.977.
Therefore, in *Mallchok,* this Court held that a
license application could not be denied based on a
policy which had not been adopted as a rule.

Subsequently, the commission promulgated a
rule which encompassed the half-mile separation
policy, *i.e.,* 1979 AC, R 436.1133, the rule at issue
in this case. Therefore, the instant case is not
similar to *Mallchok* because, unlike in *Mallchok,*
the commission in the present case in fact relied
on a formally promulgated rule in rendering its
decision. The question here concerns the interpre-
tation of a rule, not the failure to formally promul-
gate a rule.

We conclude that the commission properly interpreted its own rule and that the lower court erred in holding otherwise. In *Johnston v Billot,* 109 Mich App 578, 589-590; 311 NW2d 808 (1981), this Court stated:

"When construing an administrative rule, the rules of statutory construction apply. MCL 24.232; MSA 3.560(132). If a statute or rule is unambiguous on its face, we will avoid further interpretation or construction of its terms. *Detroit v Redford Twp,* 253 Mich 453; 235 NW 217 (1931). However, if ambiguity exists, it is our duty to give effect to the intention of the Legislature, or in this case the administrative agency, in enacting the statute or rule. *Melia v Employment Security Comm,* 346 Mich 544; 78 NW2d 273 (1956). To resolve a perceived ambiguity, a court will look to the object of the statute or rule, the evil or mischief which it is designated to remedy, and will apply a reasonable construction which best accomplishes the purpose of the statute or rule. *Bennetts v State Employees Retirement Bd,* 95 Mich App 616; 291 NW2d 147 (1980)."

We find 1979 AC, R 436.1133(c) unambiguous on its face. In order for an SDD license applicant to be eligible for waiver of the one-half mile separation requirement pursuant to subsection (c), the thoroughfare must (1) be a major thoroughfare and (2) have at least four traffic lanes. Lanes designated for parking cannot be construed as being lanes of traffic. Furthermore, even if considered ambiguous, the intent of the commission's exception would cause us to interpret this rule in the same manner. Therefore, the question of whether curb-side parking was permitted in the two outside lanes of East Seven Mile Road was crucial in deciding this license application.

## CONCLUSION

We find that a contested licensure before the

commission is a contested case within the meaning of the APA. Thus, court review of the commission's decision is governed by that act. Furthermore, although the Kassabs were not parties to this license application, they were parties to the contested case or were persons aggrieved by the case within the meaning of the APA sufficient to have standing to petition for court review of the agency's decision.

Although we find that Chief Hart's letters were competent evidence before the commission, we also find that the letters were received and considered in a procedurally defective manner. The Kassabs were entitled to notice of the commission's receipt of those letters and to an opportunity to respond to those letters before the commission rendered its decision. The letters addressed the essential factual issue in this case: whether the subsection (c) exception to the one-half mile rule applied. We find that the Kassabs were materially prejudiced by this improper procedure. Thus, the commission's decision should not have been affirmed by the circuit court.

The appropriate action in this case is remand to the commission for further fact-finding and reconsideration. The commission and the Kassabs showed that the commission's decision was based upon incomplete or inadequate facts.

Finally, the commission's, rather than the circuit court's, interpretation of the meaning of the term "four-lane thoroughfare" as used in 1979 AC, R 436.1133(c) was the correct interpretation. The commission properly considered parking conditions in its determination of whether the exception applied.

Reversed and remanded to the Liquor Control Commission.