OESTERLE v CITY OF MASON

Docket No. 148008. Submitted February 9, 1994, at Lansing. Decided April 4, 1994, at 9:35 A.M.

Lyle M. Oesterle and June M. Oesterle, the owners of land in the City of Mason registered under a farmland development rights agreement pursuant to the Farmland and Open Space Preservation Act, MCL 554.701 *et seq.*; MSA 26.1287(1) *et seq.*, filed a petition in the Michigan Tax Tribunal contesting the validity of a special assessment confirmed by the city for the installation of a storm sewer as part of a project to improve a road abutting the petitioners' property. The tribunal granted partial summary disposition for the city, ruling that the special assessment was not precluded by the act. The petitioners appealed.

The Court of Appeals *held:*

Section 9 of the act, MCL 554.709; MSA 26.1287(9), provides in part that a city may not impose special assessments for nonfarm drainage on land for which a development rights agreement or easement has been recorded except with regard to a dwelling or a nonfarm structure located on the land. In this case, there were no dwellings or nonfarm structures on the petitioners' property and the storm ·sewer was for nonfarm drainage. Accordingly, the special assessment at issue may not be levied against the petitioners' property.

Reversed.

TAXATION — SPECIAL ASSESSMENTS — FARMLAND AND OPEN SPACE PRESERVATION ACT — NONFARM DRAINAGE.

A storm sewer installed as part of a project to improve a road abutting undeveloped farmland registered under a farmland development rights agreement pursuant to the Farmland and Open Space Preservation Act constitutes nonfarm drainage for which the act provides an exemption from any special assessment for the improvement (MCL 554.709; MSA 26.1287[9]).

*Oade, Stroud & Kleiman, P.C.* (by, *Ted W.*

REFERENCES

Am Jur 2d, State and Local Taxation §§ 188, 203, 307, 327.

See ALR Index under Repairs and Maintenance; Special Assessments; Taxes.

*Stroud*), for Lyle M. Oesterle and June M. Oesterle.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J. Berardo* and *Martha J. Marcero*), for City of Mason. Lansing

Amicus Curiae:

*Willingham & Coté, P.C.* (by *John A. Yeager* and *Curtis R. Hadley*), for Michigan Farm Bureau.

Before: GRIFFIN, P.J., and CAVANAGH and H. A. KOSELKA,* JJ.

CAVANAGH, J. Petitioners appeal as of right from an order granting respondent's motion for partial summary disposition. We reverse.

Petitioners, Lyle and June Oesterle, own a parcel of land in Mason. The land is registered under a farmland development rights agreement as provided by the Farmland and Open Space Preservation Act, MCL 554.701 *et seq.*; MSA 26.1287(1) *et seq.* There is no residence or nonfarm structure on the registered land. On June 4, 1990, respondent confirmed a special assessment for curb and gutter, storm sewer, and street improvements along an existing roadway that abuts petitioners' property. Of the special assessment, $19,690.87 related to the installation of the storm sewer.

Petitioners filed a petition with the Michigan Tax Tribunal, alleging in part that imposition of the $19,690.87 special assessment was precluded by § 9 of the act. The tribunal granted respondent's motion for partial summary disposition, holding that § 9 did not preclude the imposition of the special assessment. This appeal followed. We

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

granted the Michigan Farm Bureau leave to file an amicus brief.

We are called on in this case to interpret § 9 of the act. That section provides as follows:

A city, village, township, county, or other governmental agency may not impose special assessments for sanitary sewers, water, lights, or *nonfarm drainage* on land for which a development rights agreement or easement has been recorded except as to a dwelling or a nonfarm structure located on the land unless the assessments were imposed prior to the recording of the development rights agreement or easement. Land covered by this exemption shall be denied use of an improvement created by the special assessment until it has paid an amount not more than the amount that would have been paid had the land not been excluded. The land exempted from the assessment shall be denied use of the improvement as long as the owner of the land has a recorded development rights agreement or easement. [MCL 554.709; MSA 26.1287(9). Emphasis added.]

The purpose of the act is to encourage farmland owners to refrain from developing their lands by reducing the financial pressures that might induce them to sell the land to a developer. *Dykstra v Dep't of Natural Resources,* 198 Mich App 482, 484; 499 NW2d 367 (1993).

The primary goal of judicial interpretation of statutes is to discern and give effect to the intent of the Legislature. *Beckman Production Services, Inc v Dep't of Treasury,* 202 Mich App 342, 344; 508 NW2d 178 (1993). If the meaning of statutory language is clear, then judicial construction is not necessary or permitted. *Id.* at 345. When a statute does not provide a definition for a word, courts are required to give the word its plain or ordinary meaning. *Primages Int'l of Mich v Liquor Control*

*Comm,* 199 Mich App 252, 256; 501 NW2d 268 (1993).

The act does not define the term "nonfarm drainage." However, that language is not ambiguous. It plainly refers to drainage that is not associated with the agricultural use of farmland.

Respondent readily concedes that the drain at issue is not related directly or indirectly to the farm operation, but is intended to drain only the street. It is therefore beyond dispute that the storm sewer provides for nonfarm drainage.

The Tax Tribunal ruled that because the storm sewer was being constructed as part of a road improvement project, and because there is no exemption under the act for road improvements, there was no exemption for the storm sewer. We disagree. There is nothing in the act to suggest that nonfarm drainage is not exempt when it is installed contemporaneously with, or as part of the same project for, road improvements. (If such were the case, it is difficult to imagine under what circumstances the exemption for nonfarm drainage would apply.) We have found no authority for the proposition that the various components of a special assessment are not severable.

The Tax Tribunal construed the final two sentences of § 9 to mean that no exemption may be granted where it is not possible to refrain from using an improvement. Regardless of whether water from petitioners' farmland would actually drain into the storm sewer (which appears from the record not to be the case), the tribunal's conclusion is not warranted by the statutory language. Those two sentences were clearly intended simply to ensure that owners of registered farmland do not unfairly benefit from improvements for which they have not paid; they were not meant

to be read as an additional limitation on the exemption.

Accordingly, we hold that a storm sewer that is installed adjacent to registered farmland as part of a road improvement project provides for nonfarm drainage, and that no special assessment relating to the storm sewer may be imposed on such farmland.

Reversed.