MICHIGAN *ex rel* COMMISSIONER OF STATE POLICE v NINE
MONEY FALL GAMES

Docket No. 66625. Submitted March 22, 1983, at Detroit.—Decided
November 8, 1983.

Frank Cook provided certain games to be used during the week of
the Super Bowl football game in 1982 at Pontiac. The Super
Bowl coordinator and three Pontiac police officers urged Mr.
Cook to supply more "adult type games". Because of the
assurances by the coordinator and police officers that illegal
games would be permissible during Super Bowl week, Mr. Cook
supplied certain gambling games. The games, related equip-
ment, two vans and some $2,811.29 in cash were seized pursu-
ant to a valid search warrant. Mr. Cook was charged with
keeping and maintaining a gaming room, a gaming table or a
game of chance. Mr. Cook pled guilty to attempted keeping and
maintaining a gaming room, a gaming table or a game of
chance in exchange for a promise that his vans would be
returned. The State of Michigan, *ex rel* Commissioner of State
Police, filed a petition in Oakland Circuit Court seeking forfei-
ture of the seized games, equipment and money. Following a
hearing at which Mr. Cook sought the return of the seized
games, equipment and money, George H. LaPlata, J., deter-
mined that the games in question were gambling devices, but,
because of the involvement of the coordinator and the police
officers, denied the petition for forfeiture and ordered that the
games, equipment and money be returned to Mr. Cook. Peti-
tioner appeals. *Held:*

While the statute relative to the disposition of gambling
paraphernalia provides that a court, as an alternative to forfei-
ture or destruction of seized gambling paraphernalia, may
order any other disposition of the property, such language
cannot be construed to authorize the return of such parapher-
nalia to a person asserting ownership of the same. The Legisla-
ture has evidenced an intent to suppress gambling by the
prohibition of the ownership or control of gambling devices and

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 4] 38 Am Jur 2d, Gambling § 174 *et seq.*
[3] 38 Am Jur 2d, Gambling §§ 12, 18, 31.

of the receipt of money for gambling purposes. Since the trial court determined that the seized games were gambling devices, it was error for the trial court to order the return to Mr. Cook of the games and the equipment and money associated with those games.

Reversed and remanded.

1. GAMING — SEIZURE OF GAMBLING PARAPHERNALIA — TITLE TO GAMBLING PARAPHERNALIA.

A person asserting ownership of properly seized gambling paraphernalia acquires no legal title to those materials and is not entitled to their return.

2. GAMING — SEIZURE OF GAMBLING PARAPHERNALIA — DISPOSITION OF GAMBLING PARAPHERNALIA.

The statute relative to the disposition of seized gambling paraphernalia provides that a court may dispose of such seized gambling paraphernalia in any of three ways: (1) the court may order that the property be turned over to the appropriate law enforcement agency for such disposition as the court shall prescribe; (2) the court may order that the property be destroyed; or (3) the court may order any other disposition of the property (MCL 750.308a; MSA 28.540[1]).

3. STATUTES — JUDICIAL CONSTRUCTION.

The words of a statute should be given their plain and ordinary meaning unless a literal interpretation of the statutory language would be inconsistent with the purpose and policies of the statute as a whole.

4. GAMING — SEIZURE OF GAMBLING PARAPHERNALIA — LEGISLATIVE PURPOSE.

The legislative intent to suppress gambling would not be achieved if the statutory provision relative to the disposition of seized gambling materials is construed to permit a trial court, in its discretion, to return the gambling devices and related items, including money seized with the gambling devices, to a person asserting an ownership interest in such devices, items and money, since it is clear that the Legislature intended to prohibit the ownership or control of gambling devices even where such devices are not used for gambling and to prohibit the acceptance of money for gambling purposes (MCL 750.308a; MSA 28.540[1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Edwin M. Bladen*

and *John G. VanSlambrouck,* Assistants Attorney General, for petitioner.

*Michael Kranson,* for Frank Cook.

Before: R. M. MAHER, P.J., and MACKENZIE and M. B. BREIGHNER,* JJ.

PER CURIAM. Petitioner appeals by right from the judgment of the circuit court. Petitioner filed a petition pursuant to MCL 750.308a; MSA 28.540(1) which provides for the disposition of articles and property used in connection with illegal gambling and seized in accordance with MCL 750.308; MSA 28.540. The items named in the petition were seized pursuant to a validly issued search warrant on January 21, 1982. The owner of the property, Mr. Frank Cook, was subsequently charged with keeping and maintaining a gaming room, gaming table or any game of chance, MCL 750.303; MSA 28.535. Mr. Cook pled guilty to an unspecified lesser included offense of attempt. Mr. Cook had entered into a plea bargain in which the state agreed to return two vans seized pursuant to the warrant. Subsequently, petitioner brought this action for forfeiture of the remaining items seized. At the forfeiture hearing, Mr. Cook testified that he was the owner of a company that operates amusement rides and carnival games. Sometime before the 1982 Super Bowl football game was to be held in Pontiac the Super Bowl coordinator asked Mr. Cook to furnish some games for use during Super Bowl week. Mr. Cook provided 11 games but, after the coordinator and three Pontiac police officers urged Mr. Cook to provide more "adult type games", he changed his selection of

* Circuit judge, sitting on the Court of Appeals by assignment.

amusements. Mr. Cook had not used these games for two years because he believed that they were illegal. He set up the devices, however, after the coordinator and the three police officers assured him that it was permissible to use the games during Super Bowl week. Mr. Cook also testified that he would not have provided the games had he thought the games were illegal.

At the conclusion of the hearing, the court ruled that the items in question were gambling devices. However, the court refused to grant the petition for forfeiture. The court was particularly impressed that Mr. Cook installed the devices in the presence of three police officers and the coordinator. As a result, the court ordered the devices and the money found therein returned to Mr. Cook. The sole issue on appeal is whether the trial court erred in ordering those gambling materials returned to Mr. Cook.

Petitioner has cited numerous cases from this and other jurisdictions for the rule that the "owner" of properly seized gambling materials acquires no legal title to those materials and is not entitled to their return. See, *e.g., Henry v Kuney,* 280 Mich 188; 273 NW 442 (1937); *People v One Pin Ball Machine,* 20 Ill App 2d 515; 156 NE2d 279 (1959); *People v Wrest,* 345 Ill App 186; 103 NE2d 171 (1952); *Hofferman v Simmons,* 290 NY 449; 49 NE2d 523 (1943); *Dorrell v Clark,* 90 Mont 585; 4 P2d 712 (1931). The issue in the present case, however, is not whether Mr. Cook is legally *entitled* to the return of the seized gambling materials. Instead, the question is whether the Legislature has given the court the *discretion* to order those materials returned to Mr. Cook.

The applicable statute is MCL 750.308a; MSA 28.540(1), which provides in pertinent part:

"On application of a sheriff, chief of police of a police department, commissioner of the Michigan state police, or other peace officer, a court or magistrate of competent jurisdiction may upon due notice and hearing turn over to said sheriff, chief of a police department, commissioner of the Michigan state police, or peace officer, any articles or property listed under the provisions of [MCL 750.308; MSA 28.540] lawfully seized by any such peace officer for such disposition as the court or magistrate shall prescribe, or said court or magistrate may provide for the destruction or other disposition of said articles or property."

Under this provision, a court may dispose of gambling devices or money as described in MCL 750.308; MSA 28.540 in any of three ways: (1) the court may order that the property be turned over to the appropriate law enforcement agency for "such disposition as the court * * * shall prescribe"; (2) the court may order that the property be destroyed; and (3) the court may order any "other disposition" of the property. By virtue of the third option, the Legislature has given the court a wide range of dispositions from which to choose. We must decide whether this range includes returning the seized gambling materials to their owner.

It is axiomatic that words in a statute are to be given their plain and ordinary meaning. *Production Credit Ass'n of Lansing v Dep't of Treasury,* 404 Mich 301, 312; 273 NW2d 10 (1978). Read literally, "other disposition" embraces returning the gambling materials to their owner, for this is certainly a disposition of the property. However, we may depart from a literal reading of a statutory provision when such interpretation in inconsistent with the policies and purposes of the act as a whole. *Salas v Clements,* 399 Mich 103, 109-110; 247 NW2d 889 (1976). We find that the literal

reading of "other disposition" indicated above conflicts with the Legislature's purpose in enacting the gambling laws.

The statutory scheme governing gambling is found at MCL 750.301-750.315; MSA 28.533-28.547. The purpose of this scheme is to suppress gambling, an activity "injurious to the morals and welfare of the people". *Parkes v Judge of Recorder's Court,* 236 Mich 460, 465–466; 210 NW 492 (1926).

The legislative purpose of suppressing gambling cannot be achieved if we interpret the statute as allowing the court to return gambling devices and money found in or on such devices to their owner. Once returned, gambling devices must be stored in some location. However, the statute provides for the punishment of one "who shall suffer or permit on any premises owned, occupied or controlled by him any apparatus used for gaming or gambling". MCL 750.302; MSA 28.534. Storage of such a device is prohibited even though the device is not actually used for gambling. *People v Lippert,* 304 Mich 685; 8 NW2d 880 (1943). Money found in or on a gambling apparatus is probably used to place a bet. The acceptance of money for such a purpose is prohibited by the statute. MCL 750.301; MSA 28.533. Thus, returning this money would not further the legislative goal of suppressing betting.

While we share the trial court's sympathy for Mr. Cook's predicament, the relief granted by the court is not authorized by the statute. Regardless of the apparent "innocence" with which Mr. Cook entered into the illegal venture, the Legislature has not seen fit to restore to one in such a position the instrumentalities of his offense. We conclude that the trial court erred in returning to Mr. Cook the seized gambling devices and money.

Reversed and remanded.