## MICHIGAN GAMING INSTITUTION, INC v STATE BOARD OF EDUCATION

Docket No. 168141. Submitted March 16, 1995, at Detroit. Decided June 16, 1995, at 9:15 A.M. Leave to appeal sought.

The State Board of Education and the Superintendent of Public Instruction denied an application by the Michigan Gaming Institute, Inc., to operate a proprietary school designed to teach casino games to potential casino employees on the basis that gaming is considered to be criminal behavior in Michigan. The petitioner appealed and the Wayne Circuit Court, Richard P. Hathaway, J., reversed the respondents' decision, ruling that gambling is not against public policy per se because it has been legalized in other areas and that a trade school would not promote illegal gambling. The respondents appealed.

The Court of Appeals *held:*

1. The contested case rules of the Administrative Procedures Act are inapplicable in this action.

2. The State Board of Education's decision was not authorized by law because gambling is permitted in some forms in Michigan, casino gambling is allowed on a limited level, and the public policy of the state does not prohibit completely casino gambling. The respondents' decision was inconsistent with the state's qualified acceptance of casino gambling.

3. The petitioner's stated purpose of teaching lawful methods for lawful employment is credible. A school to teach limited lawful purposes of casino gambling is not contrary to public policy.

4. Because the respondents' decision was not authorized by law, the circuit court's reversal of the respondents' denial of the license application was proper.

Affirmed.

CORRIGAN, J., dissenting, stated that the respondents' decision was authorized by law and that the denial of the license was proper. Current Michigan law prohibits the conduct that the petitioner's school would teach, casino gambling is illegal in

REFERENCES

Am Jur 2d, Administrative Law § 249; Gambling §§ 10-19.
See ALR Index under Administrative Law; Gambling.

Michigan, and the state's public policy is against casino gambling.

1. ADMINISTRATIVE LAW — ADMINISTRATIVE PROCEDURES ACT — LICENSES — PROPRIETARY SCHOOLS — CONTESTED CASE RULES.

The proprietary schools act does not require a hearing for the issuance of a license for a proprietary school; therefore, the contested case rules of the Administrative Procedures Act are inapplicable in an action regarding a license for a proprietary school (MCL 24.203[3], 395.101 *et seq.*; MSA 3.560[103][3], 15.627[1] *et seq.*).

2. STATE — GAMBLING — PUBLIC POLICY — CASINO GAMBLING SCHOOLS.

Michigan permits gambling in some forms in the state and allows casino gambling on a limited level; therefore, because the public policy of the state does not prohibit completely casino gambling, a school to teach the limited lawful purpose of casino gambling does not contravene public policy.

*Sean P. Kavanagh,* for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Jane O. Wilensky* and *Paul J. Zimmer,* Assistant Attorneys General, for the respondents.

Before: JANSEN, P.J., and CONNOR and CORRIGAN, JJ.

JANSEN, P.J. Respondents appeal as of right from an August 31, 1993, ruling of the Wayne Circuit Court reversing an administrative decision to deny petitioner's application to operate a proprietary school designed to teach prospective casino employees. We affirm the ruling of the circuit court.

On December 29, 1992, petitioner applied to the proprietary school unit of the Department of Education for a license to operate a private trade school. The proposed programs included courses in the casino games of craps, blackjack, roulette,

baccarat, and poker. On January 14, 1993, the superintendent's committee on proprietary schools (hereafter referred to as the Committee) met and discussed petitioner's application. The Committee voted to instruct the supervisor of the proprietary school unit to return the application to petitioner because gaming is illegal in Michigan and the proprietary school unit would not approve applications for schools teaching casino gambling unless gaming were legalized. On January 25, 1993, the application was returned to petitioner.

The application was then resubmitted to the proprietary school unit so that petitioner could pursue its administrative remedies if the application was denied by the State Board of Education. On February 19, 1993, the Committee voted to recommend that the superintendent deny the issuance of a license to petitioner. On March 10, 1993, the State Board of Education voted to deny petitioner's application because gaming is considered to be criminal behavior in Michigan. The board implicitly relied on an opinion of the Attorney General for the denial. OAG, 1977-1978, No 5368, p 605 (September 7, 1978).

On April 15, 1993, petitioner filed a claim of appeal in the Wayne Circuit Court seeking reversal of the State Board of Education's decision. The circuit court reversed the decision of the State Board of Education, ruling that gambling is not against public policy per se because it has been legalized in other areas and that a trade school would not promote illegal gambling. The circuit court's order has been stayed pending this appeal.

We first turn to the proper standard of review to be applied. The Administrative Procedures Act (APA), MCL 24.201 *et seq.*; MSA 3.560(101) *et seq.*, provides for direct review by the courts of final decisions or orders in a contested case. MCL

24.301; MSA 3.560(201). A contested case is a procedure that requires notice and a hearing. MCL 24.203(3); MSA 3.560(103)(3). Unless the issuance of a license requires notice and a hearing, the APA's contested case rules are inapplicable. *Bukhtia v Bureau of State Lottery,* 190 Mich App 323, 326; 475 NW2d 475 (1991). Here, the proprietary schools act, MCL 395.101 *et seq.*; MSA 15.627(1) *et seq.*, does not require a hearing for the issuance of a license. Thus, the APA contested case rules are inapplicable in the present case.

We, therefore, apply the standard of review set forth in the Michigan Constitution. That is, all final decisions, findings, rulings, and orders of the administrative agency (here, the State Board of Education) are reviewed to determine whether the final decision, finding, ruling, or order is authorized by law. Const 1963, art 6, § 28. Because no hearing was required in this case, we need not consider whether the final decision, finding, ruling, or order was supported by competent, material, and substantial evidence on the whole record.

We find that the State Board of Education's decision was not authorized by law because gambling is permitted in some forms in Michigan, casino gambling is allowed on a limited level, and the public policy of this state does not completely prohibit casino gambling. Thus, the State Board of Education's decision not to issue the license to teach casino games to prospective casino employees was inconsistent with this state's qualified acceptance of casino gambling.

Although not dispositive of the issue, gambling is not prohibited per se in this state. The state runs a lottery system, MCL 432.1 *et seq.*; MSA 18.969(1) *et seq.* Bingo is legal and millionaire parties are legal, MCL 432.101 *et seq.*; MSA 18.969(101) *et seq.* Horse race betting is legal, MCL

431.61 *et seq.*; MSA 18.966(31) *et seq.* The provision allowing millionaire parties specifically recognizes that the games to be played are those "customarily associated with a gambling casino." MCL 432.102(9); MSA 18.969(102)(9).

The above-named gambling activities are, of course, strictly regulated, but are, nevertheless, not prohibited outright. Moreover, casino gambling does exist in this state on Indian reservations, although these casinos are permitted pursuant to federal law. 25 USC 2701 *et seq.* While this state did not vote to place casino gambling on Indian reservations, the Legislature could have foreclosed the possibility of casinos being permitted on Indian reservations in Michigan by refusing to legalize other similar forms of gambling. A state that prohibits an entire class of gambling can block Indian tribes from operating the same class. *United States v Sisseton-Wahpeton Sioux Tribe,* 897 F2d 358, 367-368 (CA 8, 1990). By permitting some forms of gambling, including millionaire parties, lotteries, bingo, and horse betting, the Legislature has shown that the public policy of this state does not absolutely prohibit gambling and has advertised that public policy would permit casino gambling on Indian reservations.

Because some forms of gambling, including casino gambling in the form of millionaire parties and casinos on Indian reservations, are lawful, we cannot accept respondents' blanket contention that gaming is illegal in Michigan. As has been noted by this Court, "Michigan does not prohibit 'legal' gambling here or 'legal' gambling in other states." *Int'l Recovery Systems, Inc v Gabler,* 208 Mich App 49, 53; 527 NW2d 20 (1994). On rehearing, in reversing its prior decision, this Court held that it was compelled to enforce a foreign (Nevada) judgment based on an underlying gambling debt pursu-

ant to the Full Faith and Credit Clause of the federal constitution, US Const, art IV, § 1. *Int'l Recovery Systems, Inc v Gabler (On Rehearing)*, 210 Mich App 422; 527 NW2d 22 (1995). Further, it is clear that Michigan has legalized some forms of gambling.

Because the public policy of this state does not prohibit outright casino gambling, and given the lawful avenues of casino-style gambling in this state, petitioner's stated purpose of teaching lawful methods for lawful employment is credible. Casino gambling is not completely prohibited by public policy in this state, as is evidenced by the Legislature's decision to legalize millionaire parties and to allow casino gambling on Indian reservations. Therefore, a school to teach limited lawful purposes of casino gambling is not contrary to public policy.

By permitting schools to train potential casino employees, we are not preempting the legislative process as our dissenting colleague asserts. Rather, we are merely recognizing the reality in this state that gambling is permitted in some avenues and that the Legislature has already clearly expressed that public policy embraces gambling in many lawful forms. Michigan residents are not proscribed from taking their money to casinos. In the absence of a clear legislative enactment prohibiting the practice of gambling at casinos in this state, it would be unreasonable to prevent schools from providing training to Michigan residents so that they may be employed in casinos.

Respondents' unqualified rejection of casino employee training is inconsistent with this state's qualified acceptance of casino-style gambling. Permitting a school merely to teach a skill does not necessarily condone gambling. Accordingly, the decision of the State Board of Education was not

authorized by law and the circuit court did not err in reversing respondents' denial of the license application.

Because of our resolution of this appeal, we lift the stay on the circuit court's order.

Affirmed.

CONNOR, J., concurred.

CORRIGAN, J. *(dissenting)*. I would reverse the circuit court's decision. The board's decision was authorized by Michigan law, Const 1963, art 6, § 28. The State Board of Education appropriately denied petitioner's application for a license to teach courses in casino dealing for craps, blackjack, roulette, baccarat, and pai gow poker and to teach the skills necessary for students to become croupiers and blackjack dealers.[1] In denying petitioner's application for a license, the board relied on the superintendent's memorandum that gaming is criminal behavior in Michigan, citing OAG, 1977-1978, No 5368, p 605 (September 7, 1978). It is true that the Attorney General's seventeen-year-old opinion does not account for some of the more recent legislative developments exempting certain activity from the public policy against gambling. However, petitioner's school would teach behavior that Michigan law currently defines as criminal, MCL 750.301-750.315; MSA 28.533-28.547. With limited exceptions, the purpose of the current scheme of criminal laws remains to suppress gambling as an activity injurious to public morals and welfare, *State ex rel Comm'r of State Police v*

---

[1] A court could issue arrest or search warrants for on-site casino gambling in petitioner's school. The school's operators could be charged under MCL 750.302; MSA 28.534 as persons who indirectly assist in the keeping of a gaming house, and the students could be charged as loiterers in a place of illegal occupation.

*Nine Money Fall Games,* 130 Mich App 414, 419; 343 NW2d 576 (1983).

Public opinion is obviously in flux on this question. It is not for an administrative agency or the judicial branch to weigh and resolve the competing political interests. The Michigan Legislature's enactments, as they bear upon a matter of public policy, are conclusive. *Boardwalk Regency Corp v Travelers Express Co, Inc,* 745 F Supp 1266 (ED Mich, 1990) (opinion of Gilmore, J.). We are sworn to uphold the Legislature's judgments that are ensconced in our state's laws, unless our state or federal constitution forbids it.

Current Michigan law squarely prohibits the very conduct that petitioner's school would teach. Casino gambling is illegal in the State of Michigan.

In *Int'l Recovery Systems, Inc v Gabler (On Rehearing),* 210 Mich App 422, 423-424; 527 NW2d 22 (1995), in authorizing enforcement of a foreign gambling debt, this Court stated:

> It is clear that gambling is contrary to public policy in Michigan, aside from those narrowly circumscribed exceptions created by the Legislature. . . .
>
> In the case before us, further briefing has convinced us that we must treat as irrelevant our state's public policy and our courts' long-standing refusal to enforce gambling debts. We are dealing with a fait accompli, a foreign judgment.

To reach its result, the majority focuses on the narrowly circumscribed and precise exceptions created by the Legislature, and overlooks the public policy against casino gambling. Although millionaire parties are lawful in a highly regulated form in Michigan, MCL 432.101 *et seq.*; MSA 18.969(101) *et seq.*, the regulations limit operators

at millionaire parties to wages not exceeding $10 per event. 1984 AACS, R 432.212(3). Petitioner is not seeking to train operators for millionaire parties. Nor does it seek to teach people to sell lottery tickets or to work at race tracks.

Michigan is not a sovereign nation. It did not choose to allow casino gambling on Indian reservations, but was required to negotiate compacts with the various tribes by virtue of federal law, 25 USC 2701 *et seq.* The State of Michigan had no say in the federal government's decision. Nor did it (or should it) have a voice in the decision to authorize casino gambling in Windsor, Ontario.

The Legislature is the final arbiter of this state's public policy. The quintessential political judgment whether to alter the quality of our collective life in Michigan by legalizing casino gambling should occur in the political branch. Unless and until the people's elected representatives cast their votes to change our state's longstanding policy against casino gambling, petitioner's application is premature. Neither an administrative agency nor the judicial branch should trump the legislative process.

I would reverse the circuit court's order and reinstate the judgment of the State Board of Education denying the application for a license for petitioner's school.